91 Wis.2d 462 (1979)
283 N.W.2d 603
CHICAGO & NORTH WESTERN RAILROAD, Petitioner-Appellant,
v.
LABOR & INDUSTRY REVIEW COMMISSION, Respondent.[]
No. 78-416.
Court of Appeals of Wisconsin.
Submitted on briefs February 16, 1979.
Decided August 16, 1979.
*465 For the petitioner-appellant the cause was submitted on the brief of Borgelt, Powell, Peterson & Frauen, S. C. of Milwaukee.
For the respondent the cause was submitted on the brief of Bronson C. La Follette, attorney general, and David C. Rice, assistant attorney general.
Before Gartzke, P.J., Bablitch, J. and Dykman, J.
GARTZKE, P.J.
This is an appeal from the judgment of the circuit court for Dane County affirming the order of the Labor and Industry Review Commission in a handicap discrimination case brought under the Wisconsin Fair Employment Act. The commission determined that the appellant railroad engaged in handicap discrimination by its disqualification of Glenn A. Pritzl April 24, *466 1972, as a welder. The commission required his reinstatement in that capacity and ordered that he recover backpay and benefits to April 24, 1972.
Mr. Pritzl filed his complaint under the Wisconsin Fair Employment Act in 1973, alleging that he was discriminated against with respect to employment because of a handicap due to his condition of epilepsy. A hearing was held in 1975. The commission's final order was entered September 16, 1977. Appellant petitioned the circuit court for review. June 15, 1978, the circuit court rendered judgment affirming the commission. After filing notice of appeal to the court of appeals, appellant moved the circuit court for relief from the judgment on grounds of newly discovered evidence. The circuit court denied the motion February 19, 1979. Appellant has made the same motion to this court.
The issues are:
1. Is there substantial evidence to support the commission's decision that the employee is able to perform his job-related duties as a welder at the standards set by the employer?
2. Is the post-judgment order of the circuit court denying appellant's motion for relief on grounds of newly discovered evidence reviewable on appeal from the judgment?
3. May we reverse the judgment of the circuit court affirming the commission's order on the ground that it is probable that justice has miscarried?
4. May we grant a motion to relieve appellant from the judgment or for the taking of additional testimony, pursuant to sec. 806.07(1) (b) or (h), Stats.?
5. May the 1974 amendment to ch. 111, Stats., authorizing the department to award backpay in cases of employment discrimination be applied retroactively?
6. Has the Railway Labor Act or Railroad Safety Act preempted state legislation as to employment discrimination against the handicapped?
*467 7. Has appellant been denied due process of law by unreasonable administrative delay?

1. Employee Not Shown To Be Unable To Perform Duties

Sections 111.32(5) (a) and 111.325, Stats. 1973 of the Wisconsin Fair Employment Act make it unlawful for an employer to discriminate against an employee because of a handicap.
Section 111.32(5) (f), Stats. 1973, provides, in relevant part:
The prohibition against discrimination because of handicap does not apply to failure of an employer to employ or to retain as an employe any person who because of a handicap is physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job.
[1]
Mr. Pritzl was not permitted to continue his employment because of his handicap, epilepsy. The burden is therefore on the appellant employer to show that the exception provided by sec. 111.32(5) (f), Stats. 1973, applies. Chicago, M., St. P. & P. RR. Co. v. ILHR Dept., 62 Wis.2d 392, 398, 215 N.W.2d 443 (1974).
Section 111.32(5) (f), Stats. 1973, includes a "future hazards" exception. That exception arises out of Chicago, M., St. P. & P. RR. Co. v. ILHR Dept., 62 Wis.2d 392, 398, 399. The court said in that case that there was no evidence that the handicapped employee "was unable to efficiently perform the duties of his job" and, "In fact, there was no medical testimony that, to a reasonable degree of medical certainty, the working conditions were or would be in the future hazardous to his health."
Bucyrus-Erie Company v. DILHR, 90 Wis.2d 408, 424, 280 N.W.2d 142, 150 (1979), describes the burden on the employer to come within the exception as follows: *468 If the evidence shows that the applicant has a present ability to physically accomplish the tasks which make up the job duties, the employer must establish to a reasonable probability that because of the complainant's physical condition, employment in the position sought would be hazardous to the health or safety of the complainant or to other employees or frequenters of the place of employment. (Emphasis added.)
The critical finding of fact by the commission disputed by appellant is that Mr. Pritzl's handicap is not reasonably related to his ability to adequately undertake the job-related responsibilities of a welder for appellant. That finding, considered in light of the Bucyrus-Erie statement of the burden imposed upon the employer by sec. 111.32(5) (f), Stats. 1973, implies that the appellant has not shown to a reasonable probability that continued employment of Mr. Pritzl as a welder will be hazardous to him or other employees or frequenters of the place of employment.
Findings and orders of the commission under the Fair Employment Act are subject to judicial review pursuant to ch. 227, Stats., by virtue of sec. 111.37, Stats. 1973. Section 227.20 (6), Stats., provides that an agency's finding of fact will not be overturned unless the finding "... is not supported by substantial evidence in the record."
[3, 4]
A reviewing court does not independently weigh the evidence or pass on the credibility of the witnesses. City of Superior v. ILHR Department, 84 Wis.2d 663, 666, 267 N.W.2d 637 (1978). We are prohibited by statute from substituting our judgment for that of the agency as to the weight of the evidence on a disputed finding of fact. Sec. 227.20(6), Stats. We cannot overturn an agency's finding even if it may be against the great weight and preponderance of the evidence. Holtz & Krause, Inc. *469 v. DNR, 85 Wis.2d 198, 204, 270 N.W.2d 409 (1978); City of Superior v. ILHR Department, 84 Wis.2d 663, 666; Voight v. Washington Island Ferry Line, 79 Wis.2d 333, 342, 255 N.W.2d 545 (1977). Particularly apropos is Robertson Transport. Co. v. Public Serv. Comm., 39 Wis.2d 653, 658, 159 N.W.2d 636, 638 (1968), where the court said: "There may be cases where two conflicting views may each be sustained by substantial evidence. In such a case, it is for the agency to determine which view of the evidence it wishes to accept."
Mr. Pritzl began employment with appellant in 1960. He had a non-industrial accident in May, 1971 and suffered a seizure a month later. He fell off a horse in August, 1971 and took leave of absence from his employment. He had a second seizure in October, 1971 which, for the first time, was diagnosed as epileptic. A neurologist prescribed antiepileptic medication. As he had no seizures between October, 1971 and April, 1972, his family physician believed he could return to work. He regained his motor vehicle operator's license. He was examined in April, 1972 by company physicians, who concluded he could return to work as a welder. Appellant, however, has a rule which prohibits an employee from returning to work if the employee is subject to or has had a history of epileptic seizures and if the employee operates a motor car, motor vehicle or power driven work equipment as part of his duties. Welders come within that rule. The company medical director recommended that Mr. Pritzl not be rehired as a welder.
The director testified that appellant should not rehire Mr. Pritzl as a welder unless it is established that Mr. Pritzl does not have epilepsy. The potential risks in Mr. Pritzl's work are such that, in the opinion of the medical director, Mr. Pritzl should not be rehired because of the possibility that he might have another attack, if only because he might fail to take medication, a matter over *470 which the company has no control. A person having a seizure may lose consciousness and suffer involuntary movement of the extremities. Medication controls the seizure disorder but does not cure epilepsy. In the director's opinion, the continued employment of Mr. Pritzl would be hazardous to him and his fellow employees. He advised appellant that Mr. Pritzl should not be permitted to work around moving equipment or on elevations. As welders' responsibilities include work under these conditions, appellant refused to rehire Mr. Pritzl.
The railroad's welders spend about 60% of their time working on tracks in switching areas. They may work as far as ten miles from the nearest town and on bridges as high as fifty feet or under derailed cars. A welder operates an acetylene torch but always works with a helper. The welder wears a mask while welding or cutting track or other metal and must concentrate on the work before him. The helper must maintain a lookout for danger to the welder. A welder operates a "motor car," a motorized version of a handcar used to transport the welder and his helper on rail track to worksites. A welder also operates a pickup truck with rubber tires and flanged wheels so that it may be driven on a highway or on rail tracks. Motor cars operate at speeds up to thirty-five and the trucks at speeds up to sixty-five per hour. The only other moving equipment operated by a welder are rail grinders. Grinders have an abrasive wheel and exposed moving parts which, however, are at least partially shielded. A welder must many times stop his work on a track to let a train pass. He may be separated from his helper as much as fifteen minutes while a train passes and stand as close as three feet from the train.
A neurologist testified that he advises patients suffering from epilepsy not to work around unprotected machinery or operate mobile equipment or work on elevated structures from which they may fall during a seizure. In *471 his experience, patients whose epilepsy is controlled by medication and who have not had a seizure for years may have a seizure for reasons which cannot be explained. Seizures may be induced by alcohol, fatigue or excitement.
The neurologist testified, however, that medication prevents seventy to ninety percent of patients from having seizures. If a patient is on medication, the seizure will not be as severe as it would be without medication. While some patients on medication do not have a warning as far in advance of a seizure as do patients not on medication, those who do may stop work, lie down on the floor, have a seizure and get up and go back to work. Co-workers may not even know that a seizure is in progress.
[5]
We conclude that the commission could find on this record that the appellant employer has not sustained its burden of proving that the exception in sec. 111.32(5) (f), Stats. 1973, justifies its refusal to rehire Mr. Pritzl as a welder. The initial decision not to rehire Mr. Pritzl was based on the opinion and recommendation of the company's medical director. Appellant is not, however, relieved of the charge of discrimination through its reliance on the opinion of the company doctor. Bucyrus-Erie, 90 Wis.2d 408, 423-24, 280 N.W.2d 142, 149-50.
The testimony of the neurologist is sufficient basis to conclude that appellant has not shown a reasonable probability that Mr. Pritzl will have a future seizure. It is possible that a seizure will occur, with or without medication; but a possibility does not rise to a probability. The commission could also conclude that appellant has not shown a reasonable probability that Mr. Pritzl, if he has a seizure, will injure himself or others.
The record makes uncomfortable reading. If possibilities become actualities, a tragedy may result. Foresight, however, deals with the reasonably probable, Bucyrus-Erie, *472 90 Wis.2d 408, 421, 280 N.W.2d 142, 148, and the commission's prediction is that a tragedy is not reasonably probable. Where conflicting views are each sustained by substantial evidence, the choice is made by the commission and not the courts. Robertson Transport. Co. v. Public Serv. Comm., 39 Wis.2d 653, 658, 159 N.W. 2d 636, 638.

2. Post-Judgment Order Not Reviewable On Appeal From Judgment

The circuit court denied appellant's motion for relief from the judgment made pursuant to secs. 808.07(2) (a) 4 and 806.07(1) (b) and (h), Stats. Appellant claims newly discovered evidence which entitles appellant to a new trial under secs. 806.07 and 805.15(3), Stats.[1]
The new evidence is said to be that Mr. Pritzl has suffered at least three epileptic seizures since the hearing before the commission and is no longer qualified by the state to operate a motor vehicle. His physician stated in a deposition in another proceeding that Mr. Pritzl had a seizure in November, 1977 due to failure to take medication and had a seizure in June, 1978 while on medication. A hospital record refers to a third seizure about a month before the November, 1977 seizure.
*473 [6]
The appeal is from the judgment of the circuit court. An appeal from a judgment does not embrace an order entered after the judgment. Zeisler Corp. v. Page, 24 Wis.2d 190, 199, 128 N.W.2d 414 (1964), citing Schlichting v. Schlichting, 15 Wis.2d 147, 160, 112 N.W.2d 149 (1961). The post-judgment order of the circuit court denying appellant's motion for relief is not therefore reviewable on this appeal.

3. Power Of Court Of Appeals To Reverse For Miscarriage Of Justice

The circuit court said that in view of the claimed newly discovered evidence, it appears that justice has miscarried if the judgment affirming the commission is allowed to stand. The court said that it would grant the motion for relief from the judgment if the court could do so but concluded that it lacked that power.
We requested additional briefs on the power of this court to reverse the judgment of the circuit court and to order a new trial under sec. 752.35, Stats., to permit a timely application to the circuit court pursuant to sec. 227.19(1), Stats. Section 227.19(1) provides that under certain circumstances the court may order that additional evidence be taken before the agency.
Section 752.35, Stats., provides,
In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that *474 court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.
Orders made under the Fair Employment Act are subject to ch. 227, Stats., judicial review. Sec. 111.37, Stats. Section 227.19(1) expressly authorizes the circuit court to order the agency to take additional evidence before the date set for trial in the circuit court.
It is possible that after taking additional evidence confirming that which appellant claims exists, Mr. Pritzl could nevertheless convince the commission not to change its findings.
The Fair Employment Act, however, evinces legislative intent that proceedings before the commission have finality. Section 1055, ch. 29, Laws of 1977, created sec. 111.36(3m) (c), Stats., which provides in part:
The commission may on its own motion, for reasons it deems sufficient, set aside any final decision of the commission within one year from the date thereof upon grounds of mistake or newly discovered evidence, and remand the case to the department for further proceedings.
Section 1055, ch. 29, Laws of 1977, was effective July 1, 1977. The final order of the commission was entered September 16, 1977.
[7]
Litigation must end at some point. The legislature has shown a policy against opening Fair Employment proceedings more than one year after the final order of the commission. Although it is the commission and not the courts to whom the policy is addressed, we should not use ch. 227, Stats., as a device to circumvent the policy. Our power under sec. 752.35, Stats., is discretionary. We will not exercise that discretion to allow the circuit court at this late date to order the taking of additional evidence, assuming without deciding that we can do so.
*475 The motion to strike the supplemental record in support of the motion to take additional evidence is granted.

4. Motion To Court Of Appeals For Relief From Judgment And For Remand For Additional Testimony

Appellant moves this court for an order relieving it from the judgment of the circuit court, or, in the alternative, that the case be remanded for additional testimony pursuant to sec. 806.07(1)(b) or (h), Stats. Appellant does not specify whether remand is sought to the circuit court or to the commission. The grounds for the motion and the additional evidence sought to be presented are the same as those in support of the motion to the circuit court: claimed epileptic seizures since the commission's order.
The statutory authority for the motion is sec. 808.07 (2) (a), Stats., which provides that during the pendency of an appeal "a trial court or an appellate court may: ... 4. Hear and determine a motion filed under s. 806. 07."
[8, 9]
The scope of our review under ch. 227, Stats., is the same as that of the circuit court: whether the agency's findings are supported by substantial evidence. Vivian v. Examining Board of Architects, 61 Wis.2d 627, 632, 213 N.W.2d 359 (1974). Section 227.20(1) provides that judicial review "shall be confined to the record," except in cases of alleged irregularities in procedure before the agency. Review of a contested case is confined to the record made at the hearing, supplemented only in accordance with sec. 227.19. Ashwaubenon v. State Highway Comm., 17 Wis.2d 120, 127, 115 N.W.2d 498 (1962).
[10]
Chapter 227, Stats., cannot be supplemented by statutory remedies, such as the motion before us, pertaining *476 to civil procedure. Wis. Environmental Decade v. Public Service Comm., 79 Wis.2d 161, 170, 225 N.W.2d 917, 923 (1977), concluded that summary judgment procedure is inapplicable to administrative review under ch. 227, partly because,
Ch. 227 provides a comprehensive, fully defined, procedure for judicial review of administrative decisions. The legislature, recognizing the difference between these judicial review proceedings and civil actions, intended to provide in ch. 227 a single procedure to which the statutes relating to practice in civil actions are inapplicable.
We conclude that we have no power to remand to the circuit court or to the commission for the taking of additional testimony or to relieve appellant from the judgment pursuant to sec. 806.07(1) (b) or (h), Stats.

5. Statutory Authorization To Award Backpay May Be Retroactively Applied

Chapter 268, Laws of 1973, effective June 16, 1974, amended sec. 111.36(3), Stats., by creating (3) (b) which authorizes the department to award backpay upon a finding of discrimination. Appellant contends that the backpay provisions of the order must be vacated because the act of discrimination occurred prior to the effective date of ch. 268, Laws of 1973.
Yanta v. Montgomery Ward & Co., Inc., 66 Wis.2d 53, 224 N.W.2d 389 (1974), held that where the department in 1972 found that an employee's discharge in 1969 was an act of sex discrimination, the employee's complaint in a civil action commenced in 1972 stated a cause of action for wages lost during unemployment. The supreme court noted that prior to the effective date of ch. 268, Laws of 1973, an act of discrimination did not give rise to a private cause of action to the person suffering discrimination and that the department could not award backpay. Ross v. Ebert, 275 Wis. 523, 82 N.W.2d 315 (1957); *477 Murphy v. Industrial Comm., 37 Wis.2d 704, 155 N.W.2d 545, 157 N.W.2d 568 (1968). The court held that the 1974 amendment to sec. 111.36(3), Stats., "represents a legislative determination that the statutory rights of those discriminated against were not adequately protected by the availability of prospective relief only." Yanta, supra at 61. The court reasoned that the Fair Employment Act is designed to prevent the loss of wages resulting from employment discrimination and that a defendant should be required to compensate a plaintiff for causing the kind of harm the statute is designed to prevent. The court held that as sec. 111.36(3) (b) authorizes the department to award backpay, plaintiff's complaint stated a cause of action for damages for lost wages arising out of the discrimination while the plaintiff was unemployed. Yanta, supra, at 61, 62.
[11]
If, as in Yanta, 66 Wis.2d 53, the 1974 amendment to sec. 111.36(3) (b), Stats., creates a private cause of action for wages lost because of discrimination occurring prior to the amendment, then certainly the amendment authorizes the department in an order entered after that amendment to award backpay for wages lost because of an act of discrimination occurring prior to the 1974 amendent.[2] We so hold.

6. Fair Employment Act Not Preempted By Federal Legislation

Appellant contends that the commission lacks subject matter jurisdiction because federal legislation has preempted *478 the field. Appellant relies upon the provisions of the Railway Labor Act, 45 U.S.C. secs. 151 et seq. (1979), and the Railroad Safety Act, 45 U.S.C. secs 421 et seq. (Supp. 1979), the pertinent portions of which are set forth in footnote[3].
[12]
Federal legislation in a field affecting interstate commerce does not necessarily preclude state legislation in the same area. The test for resolving the issue of preemption "is whether enforcement of the state act would frustrate the objectives of the particular federal act which allegedly has pre-empted the field." Walker Mfg. *479 Co. v. Industrial Comm., 27 Wis.2d 669, 680, 135 N.W.2d 307 (1965).
Colorado Com. v. Continental Air Lines, 372 U.S. 714 (1963), held that the Railway Labor Act is not intended to bar states from protecting employees against racial discrimination. The Supreme Court noted at 372 U.S. 714, 724 that no provision in the act even mentions discrimination in hiring.
The Railroad Safety Act, 45 U.S.C. sec. 421, contains a congressional declaration that the purpose of that act is "to promote safety in all areas of railroad operations and to reduce railroad-related accidents, and to reduce deaths and injuries to persons and to reduce damage to property caused by accidents involving any carrier of hazardous materials." As noted in footnote 3, 45 U.S.C. sec. 431(a) authorizes the Secretary of Transportation to establish rules, regulations, orders and standards relating to safety, including employee qualifications. The Railroad Safety Act, 45 U.S.C. sec. 434, specifically provides that although laws, regulations, etc., relating to railroad safety shall be nationally uniform to the extent practicable, "A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement."
No rule, regulation, order or standard adopted by the secretary of transportation pertaining to employment by railroads of persons subject to epileptic seizures has been cited to us. Our search of the Code of Federal Regulations has uncovered no such regulation.
[13]
Accordingly, we conclude that the Fair Employment Act of this state, so far as it bars discrimination against railroad employees who are subject to epileptic seizures, *480 is not preempted by the Railway Labor Act or Railroad Safety Act.

7. Administrative Delay Does Not Require Reversal

Appellant contends that it has been denied due process because of unreasonable administrative delay. The complaint was filed with the commission May 16, 1973, the hearing was held March 18, 1975, and the examiner's proposed findings, conclusions and order were filed February 11, 1977.[4]
Appellant cites no specific authority supporting its position that we should void the order or vacate the backpay award because of the delay.
[14]
The Fair Employment Act contains no mandatory time limits within which hearings must be scheduled or decisions must be filed. Absent a mandatory requirement, administrative delay in issuing a decision is not reversible error. Neu's Supply Line v. Department of Revenue, 52 Wis.2d 386, 395, 190 N.W.2d 213 (1971).
[15]
Unreasonable administrative delay can deprive a party of property without due process. For example, lengthy delays in the delivery of welfare benefits may deny property without due process. Custom v. Trainor, 74 F.R.D. 409, 413 (N.D. Ill. 1977); Andujar v. Weinberger, 69 F.R.D. 690, 694 (S.D.N.Y. 1976), and cases cited.
[16]
The commission, however, proposes only to compel appellant to pay wages it would have paid had appellant refrained from unlawful discrimination. Appellant lost the services of Mr. Pritzl while the complaint was pending but that loss was voluntarily incurred. It could have *481 terminated that loss and its continuing liability at any time by reinstating Mr. Pritzl. Appellant chose not to do so and it cannot complain that its liability to Mr. Pritzl accrues during litigation. "[I]t has never been the law that a litigant is absolved from liability for that time during which his litigation is pending." Consolo v. Federal Maritime Com., 383 U.S. 607, 624-25 (1966).
Although constitutional considerations were not involved, the Supreme Court declined to penalize employees by shortening the period for which backpay was ordered by the National Labor Relations Board where a matter took from June 10, 1937 to December 31, 1939. Nat. Lab. Rel. Bd. v. Electric V. Cleaner Co., 315 U.S. 685, 697-698 (1942), reh. den. 316 U.S. 708 (1942). Again, in NLRB v. Rutter-Rex Mfg. Co., 396 U.S. 258, 264-265 (1969), reh. den. 397 U.S. 929 (1970), the Supreme Court held that even if the NLRB violated its duty of prompt action in making a backpay order, wronged employees were at least as much injured by the delay as was the wrongdoing employer. The Supreme Court refused to require the NLRB "to place the consequences of its own delay, even if inordinate, upon wronged employees to the benefit of wrong-doing employers." Rutter-Rex Mfg., supra, at 265.
If we were to accept appellant's theory, then administrative delay would deprive the employee of that which is rightfully his and financially absolve the employer of its wrongful conduct. We decline to hold that due process requires that unfair result, for due process itself is founded in fair play. State ex rel. Madison Airport Co. v. Wrabetz, 231 Wis. 147, 153, 285 N.W. 504 (1939).
[17]
We hold that appellant has not been deprived of its property without due process.
By the Court.Judgment affirmed. Appellant's motion to this court for relief or to take additional evidence *482 is denied. The motion to strike the supplemental record in support of that motion is granted.
NOTES
[] Petition to review granted.
[1] Section 808.07(2) (a)4, Stats., provides that during the pendency of an appeal a trial court or an appellate court may hear and determine a motion filed under sec. 806.07, Stats. Section 806.07(1)(b) provides that the court may relieve a party from a judgment, order or stipulation because of newly discovered evidence entitling a party to a new trial under sec. 805.15(3), Stats., which provides that the new trial shall be ordered on the grounds of newly discovered evidence if the court finds that the evidence has come to the moving party's notice after trial, failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it, that the evidence is material and not cumulative and that the new evidence would probably change the result.
[2] Cf. Wisconsin Telephone Co. v. ILHR Dept., 68 Wis.2d 345, 368-69, 228 N.W.2d 649 (1975), involving an order finding sex discrimination and awarding backpay. The order was entered before the effective date of the 1974 amendment to sec. 111.36(3) (b), Stats. The department therefore conceded it lacked statutory power to award backpay.
[3] 45 U.S.C. sec. 151a states that among the various purposes of the act are "... to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions;" and "... to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. sec. 152 provides in part with respect to persons subject to the act, "It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof." The Federal Railroad Safety Act, 45 U.S.C. sec. 431(a) provides that the Secretary of Transportation is to prescribe, as necessary, appropriate rules, regulations, orders and standards for all areas of railroad safety, "However, nothing in this title shall prohibit the bargaining representatives of common carriers and their employees from entering into collective bargaining agreements under the Railway Labor Act, including agreements relating to qualifications of employees, which are not inconsistent with rules, regulations, orders, or standards prescribed by the Secretary under this title. Nothing in this title shall be construed to give the Secretary authority to issue rules, regulations, orders, and standards relating to qualifications of employees, except such qualifications as are specifically related to safety."
[4] Because post-hearing briefs were filed, the matter was not finally submitted to the examiner until November 24, 1975.