Donald LEWIS, Director, Department of Human Rights, ex rel. Gregory Durham, complainant, Appellant,

v.

REMMELE ENGINEERING, INC., Respondent.

No. 51385.

Supreme Court of Minnesota.

Dec. 17, 1981.

Edward P. Starr, City Atty., Beryl Nord, Asst. City Atty., St. Paul, for appellant.

Dorsey, Windhorst, Hannaford, Whitney & Halladay and Robert Hobbins and Barbara Moffett, Minneapolis, for respondent.

YETKA, Justice.

Donald Lewis, Director, Department of Human Rights, appeals from the order of the Ramsey County District Court dismissing his complaint charging the employer Remmele Engineering, Inc. with a violation of St. Paul Legislative Code § 74.03(B)(2) (1975),[1] prohibiting, except when based upon a bona fide occupational qualification, the discharge of an employee because of his disability. We reverse in part and affirm in part.

Gregory Durham first suffered what was later diagnosed as an epileptic seizure while in the Air Force. When he suffered his second seizure within 2 months of the first, he was placed on medication. While the medication seemed to control the problem, he was honorably discharged in 1968. He suffers grand mal seizures, with no aura or warning and complete loss of consciousness.

The record indicates that after the medication was first prescribed in 1968, Durham

has suffered two or three more seizures, each associated with his failure to take the medication as directed. One seizure occurred in 1972 and another in 1974. He has testified that he has had no seizures since 1974 and now takes the medication on an established daily routine. He has never had a seizure on the job and has never lost work time due to a seizure. He has a driver's license learner's permit, but has never sought a full license although it was conceded that he could, if desired, obtain a valid driver's license under the rules in Minnesota.

In June 1978, Durham responded to an advertisement about job opportunities at Remmele Engineering. He applied for and was offered a position as a trainee in the machinist apprenticeship program. The program entailed one year of training in the company's instructional center, followed by a 3-year apprenticeship at the regular Remmele plant.

Remmele is a custom "job shop" manufacturing special machine fabrication, precision diemaking and close tolerance machinery. It is engaged in the conceptual design and manufacture of unique machines and fabricates no standard products but only specified parts for sale to large manufacturers. Machinists work primarily at large machines doing high-speed grinding, boring and cutting of metal machinery components. Safety guards cannot be placed on most of the machines because the custom work done requires too many individual parts' adjustments. Employees frequently have to stand 12 to 36 inches above ground to operate these large machines.

When Durham was hired by Remmele, he was told that his employment depended upon his passing a physical examination conducted by the Northwest Industrial Clinic. He had disclosed on his application that he suffered from epilepsy, but was told that this was not necessarily an impediment to employment because the company had already employed one person who suffered from epilepsy.

[1] St. Paul Legislative Code § 74.03(B)(2) (1975) has been recodified as St. Paul Legislative Code § 183.03(2)(b) (1981).

However, when Durham informed the examining physician that he suffered from epilepsy, the physician concluded that he could not perform the work required of the position. Durham asked for a second opinion at the clinic and the second examining physician opined that Durham could work but only on a limited basis performing ground level work and operating no hazardous machinery. As Remmele employees are required to operate all machines in all capacities, the employer concluded that Durham was not capable of performing the work and terminated his employment.

At trial, Durham introduced medical testimony of a neurologist with extensive experience in the diagnosis and treatment of epilepsy. The witness stated that Durham's epilepsy did not present undue risk and that he was capable of performing ordinary factory work. When asked a hypothetical question detailing the nature of work at Remmele, the expert still concluded that Durham was capable of performing such work safely, but continued to characterize such work as "ordinary factory work." The witness had never visited the Remmele factory or observed the functioning of its machines, but nevertheless concluded that Durham was in a lower-than-average risk category for epileptics and should not be barred from most employment opportunities.

The employer introduced expert testimony of a physician certified and experienced in occupational medicine. He reviewed Durham's records, examined the Remmele plant site and concluded that Durham's employment at Remmele would have posed a threat to his safety and health. His opinion was based upon the facts that Durham has no aura or warning before losing consciousness, that "even a lengthy absence of seizures does not increase the probability that one won't have a seizure" again and that the Remmele plant has numerous hazardous machines, almost none of which are safety guarded.

The district court concluded that Durham's disability would seriously threaten his health or safety if he were to be employed as a machinist-trainee at Remmele and that, in addition, the absence of epilepsy was a bona fide occupational qualification justifying his dismissal.

1. The appellant first contends that the district court erred in concluding that the termination of Durham's employment was based upon a bona fide occupational qualification, namely the absence of epilepsy. We agree.

As the appellant correctly suggests, there is no recorded evidence to support that conclusion and, in addition, respondent has chosen not to pursue this defense on appeal. We are of the view that, consistent with the analysis contained in *Weeks v. Southern Bell Telephone & Telegraph Co.*, 408 F.2d 228 (5th Cir. 1969), to constitute a bona fide occupational qualification, the absence of epilepsy as an employment criterion must have a factual basis, *i.e.*, that all or substantially all persons afflicted with the condition are unable to safely and efficiently perform the responsibilities of the employment position. *Id.* at 235. Not only is the record devoid of any factual basis, but the employer's own actions in employing another person with epilepsy and in offering Durham the position with knowledge of his illness are inconsistent with the theory of a bona fide occupational qualification. Further, it is clear that whether the condition constitutes a bona fide occupational qualification depends upon a number of variable factors, including the type and degree of the affliction and the nature of the position for which employment is sought. No evidence was introduced to show that epileptics, as a class, cannot perform this type of work.

As a result, that portion of the district court order upholding the termination on the basis of a bona fide occupational qualification is reversed.

2. The second question raised by the appellant relates to the district court's finding that Durham's disability posed a serious threat to his health. He argues that in the absence of evidence that he is likely to have a seizure, there is an insufficient basis for finding that this employment position would pose a serious threat to his health.

**4** 

St. Paul Legislative Code § 74.02(C) (1975)[2] created a defense for employers charged with discriminating against an employee on the basis of his disability by providing as follows:

> It is a defense to a complaint or action brought under this chapter that the person bringing the complaint or action suffers from a mental or physical disability which poses a threat to the safety of others. The burden of proving this defense is upon the respondent.

In *Lewis v. Ford Motor Co.*, 282 N.W.2d 874, 877 (Minn.1979), we expanded this defense by authorizing its use when the employer is able to establish that "the disability poses a serious threat to the health or safety of the disabled person." We did not specifically define "serious threat" and instead implied that each alleged disability must be examined on an individual basis with regard to the degree of the disability, the current condition of the employee and the nature of the position he seeks.

 It is our view that, as a general rule, to satisfy the standard of a "serious threat" to one's health or safety, the employer must establish that it relied upon competent medical advice that there exists a reasonably probable risk of serious harm. *Chicago & N.W. R.R. v. Labor & Industry*, 91 Wis.2d 462, 283 N.W.2d 603 (1979).

 In the instant case, the record indicates that the machinery which Durham would be required to operate is extremely hazardous. In addition, the type of epilepsy from which he suffers has been characterized as without aura or warning and is capable of producing total loss of consciousness. This hazardous work, together with the type of epilepsy exhibited by Durham, indicates that there is ample evidentiary support for the trial court's determination that the employer has sustained its burden of establishing that Durham's disability poses a serious threat to his health and safety.

Reversed in part, affirmed in part.

---

2. St. Paul Legislative Code § 74.02(C) (1975) has been recodified as St. Paul Legislative Code