STATE of Minnesota by Irene GOMEZ–BETHKE, Commissioner, and her successor, Kathryn E. Roberts, acting Commissioner, Minnesota Department of Human Rights, Relator,

v.

METROPOLITAN AIRPORT COMMISSION, Respondent.

No. CO–84–864.

Court of Appeals of Minnesota.

Nov. 27, 1984.

Hubert H. Humphrey, III, Atty. Gen., Carl Warren, Sp. Asst. Atty. Gen., St. Paul, for relator.

Donald W. Selzer, Jr., Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

LANSING, Judge

This is an appeal under the Minnesota Administrative Procedure Act, Minn.Stat. §§ 14.63–.69 (1982 & Supp.1983), of an order dismissing a disability discrimination charge. The hearing examiner found that the employer's refusal to hire appellant was based on a bona fide occupational qualification which appellant could not meet because of a back condition that would, in the employment circumstances, pose a serious threat to his safety and health. Appellant claims that the decision is "[u]nsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 14.69(e) (1982). We affirm.

## FACTS

Roger Kumm applied for a "building service worker II" position with the Metropolitan Airport Commission (MAC) in October 1979. This position involves routine cleaning, maintenance, and moving and lifting

objects as heavy as 55-gallon drums. He underwent a preemployment physical exam at the Airport Medical Clinic, an independent clinic not associated with MAC. The exam, administered by Dr. Alexander G. Webb, consisted of a medical history, a physical examination, and x-rays. Before considering the x-ray, Dr. Webb concluded that Kumm was "medically recommended for the position applied for." He later received the x-ray and report by Dr. Daniel L. Fink, which revealed (1) a disc narrowing at the space between the fifth lumbar and first sacral vertebra (L5–S1); (2) hypertrophic degenerative changes at L5–S1; and (3) an old compression fracture of the first lumbar vertebra.

Based on the x-ray information, Dr. Webb determined that Kumm had a 50 to 75 percent chance of developing a herniated disc and that a very likely consequence would be minimal to disabling pain. Less likely consequences could include muscle spasms and pinched nerves, which occasionally but infrequently result in loss of muscle control in the lower extremities. Because of these risks, Dr. Webb recommended that Kumm be restricted from lifting over 25 pounds.

When MAC informed Kumm of Dr. Webb's recommendation, Kumm responded that he was unaware of any back problems. Kumm consulted Dr. Donald B. Miller, who examined him and concluded that Kumm was "not particularly subject at this point in time to any marked increase in regards to a back problem compared to other males his age," and that he could "do building maintenance work without any marked increase in risk to his lumbar spine region." MAC referred Dr. Miller's report to Dr. Webb. Dr. Webb disagreed with Dr. Miller's interpretation of the x-ray.

Kumm also consulted a general surgeon, Dr. Frank J. Ankner, who concluded that Kumm was physically fit to do maintenance work "without any risk of incurring a significant back injury." Dr. Ankner said specifically that "his old compression vertebral fracture does not subject him to any risk of a herniated intervertebral disc."

Dr. Webb continued to recommend the lifting restriction, and MAC refused to hire Kumm.

Shortly before the case was heard by the hearing examiner, Dr. Stephen E. Barron examined Kumm and took a medical history and x-rays. Dr. Barron also concluded that Kumm would be able to do the lifting required by the job and that he would not have any increased risk of back problems "based on his asymptomatic state that has existed prior to this time."

After his rejection by MAC, Kumm obtained a job as a custodial engineer for Republic Airlines. At the hearing he testified that he had held the job for almost two years and that the job involves almost daily lifting of over 25 pounds. He testified that he has not missed any work due to back pain or back problems.

## ISSUE

Is the agency's decision supported by substantial evidence in view of the entire record as submitted?

## ANALYSIS

◼ At the time of Kumm's job application, Minn.Stat. § 363.03, subd. 1, provided, in part:

> Except when based on a bona fide occupational qualification, it is an unfair employment practice:
> (2) For an employer, because of * * * disability * * *
> (a) to refuse to hire * * * a person seeking employment * * *.

Minn.Stat. § 363.03, subd. 1 (1982). Disability was defined as a mental or physical condition which constitutes a handicap. *Id.* § 363.01, subd. 25. Kumm applied for a position with MAC, met the minimum qualifications for the position, and was not hired because of a perceived disability; thus, Kumm met the elements of a prima facie disability discrimination claim.

An affirmative defense to a disability discrimination complaint exists when the person bringing the complaint "has a disability which in the circumstances * * *

poses a serious threat to the health or safety of the disabled person or others." *Id.* § 363.02, subd. 5. The employer has the burden of proving the "serious threat" defense. *Id.*

In *Lewis v. Remmele Engineering, Inc.,* 314 N.W.2d 1 (Minn.1981), the court stated the general rule that "to satisfy the standard of a 'serious threat' to one's health or safety, the employer must establish that it relied upon competent medical advice that there exists a reasonably probable risk of serious harm." *Id.* at 4 (citing *Chicago & North Western Railroad v. Labor & Industry Review Commission,* 91 Wis.2d 462, 283 N.W.2d 603 (Wis.Ct.App.1979)).

MAC claims, based on the language quoted above from *Remmele,* that it need not show that its decision was based on substantial evidence, but need only show that it relied on competent medical advice. MAC interprets "competent medical advice" as advice of a competent physician and argues that its burden of proof was met simply by proving that Dr. Webb and Dr. Fink (the radiologist) are board-certified, qualified doctors.

As the hearing examiner pointed out, however, this argument oversimplifies *Remmele.* Authority cited by the Minnesota Supreme Court in *Remmele* indicates that mere reliance on a physician's opinion is not a defense. *See Chicago & North Western Railroad,* 91 Wis.2d at 471, 283 N.W.2d at 608 (employer is not relieved of the charge of discrimination through its reliance on the opinion of the company doctor), *cited in Remmele,* 314 N.W.2d at 4; *see also Lewis v. Metropolitan Transit Commission,* 320 N.W.2d 426 (Minn.1982) (the court critically evaluates conflicting medical opinions rather than relying solely on medical experts' credentials). The employer's decision must be supported by substantial evidence, as required by Minn.Stat. § 14.69(e) (1982).

Kumm claims that MAC's decision cannot be sustained under the substantial evidence standard. Specifically, Kumm argues that MAC could not rely on Dr. Webb's opinion because Dr. Webb based his opinion only on an x-ray report, and basing an opinion solely on an x-ray is not competent medical practice.

Conflicting evidence was presented on the issue of whether it is competent medical practice to rely solely on an x-ray. Kumm presented medical literature indicating that in most cases an x-ray is not a reliable indicator of degenerative disease. MAC responded with evidence from the same article that an x-ray is a reliable indicator in a case such as this, where there is a combination of disc-space narrowing and degenerative change. MAC also pointed out that the article focused on awarding compensation for existing injuries rather than predicting future risk.

Both Drs. Miller and Ankner looked mainly at potential harm from Kumm's old compression fracture rather than the disc-space narrowing and degenerative change that Dr. Webb found significant. Dr. Barron, in his deposition, mainly discussed diagnosis of existing back problems rather than the prediction of future risk. The agency, presented with conflicting expert opinions concerning the significance of certain back anomalies, was aware of the medical training and professional experience of the doctors and the bases for their opinions. It was persuaded by Dr. Webb, an independent physician not connected with MAC, and his testimony that persons with x-ray findings similar to Kumm's have a greater than 50 percent chance of developing a herniated disc, and approximately 75 percent of those individuals who do manual labor will become disabled. Testimony was also presented to the agency that Kumm reported occasional episodes of pain to Dr. Ankner, which further supported Dr. Webb's opinion.

Finally, Dr. Webb did not necessarily base his opinion only on an x-ray as Kumm claims. He took a medical history and performed a physical examination. Although he changed his opinion after receiving the x-ray report, the agency could have inferred that the examination and history contributed to Dr. Webb's final opinion.

■ Although the evidence Kumm presented may have supported a contrary decision by the agency, MAC presented considerable evidence in support of Dr. Webb's recommended lifting restriction and pointed out problems with Kumm's evidence that could validly have influenced the agency's decision. We find the hearing examiner's decision to be supported by substantial evidence in view of the entire record as submitted. Minn.Stat. § 14.69(e) (1982).

## DECISION

The hearing examiner's decision dismissing appellant's disability discrimination claim is affirmed.

Affirmed.