Jayne B. KHALIFA, Acting Commissioner, Department of Human Rights, State of Minnesota, Relator,

v.

G.X. CORPORATION, d.b.a. Great Expectations Precision Hairstyling, Respondent.

No. C2–86–2006.

Court of Appeals of Minnesota.

June 30, 1987.

Hubert H. Humphrey, III, Atty. Gen., Elizabeth V. Cutter, Sp. Asst. Atty. Gen., St. Paul, for relator.

Robert F. Collins, Minneapolis, for respondent.

Heard, considered and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Tammy Englund filed this case with the Minnesota Department of Human Rights alleging that her employer, G.X. Corporation (G.X.), improperly placed her on involuntary medical leave of absence. She alleges her employer violated state law which prohibits employers from treating pregnant employees differently from other employees "who are similar in their inability to work." The administrative law judge (ALJ) found no discrimination, and the Minnesota Department of Human Rights appeals on Englund's behalf. We affirm.

## FACTS

Tammy Englund was employed as a full-time hair stylist by G.X. Her job duties included haircutting and styling, coloring and giving permanents. She averaged two permanents a week.

In the early fall of 1983 Englund learned she was pregnant. In October she began suffering headaches when she gave permanents and asked her manager if she could be allowed to discontinue giving permanents. Englund produced a note from her doctor which said:

> Tammy Englund is pregnant. At the present time she is advised to discontinue giving permanents because of headaches.

On October 28, 1983, Gerald Brennan, president of G.X., the manager of the salon, the assistant sales manager, and Englund met for a regularly scheduled performance review. Shortly before the review, Brennan received a call from Englund's husband indicating he was concerned with Englund's permanent giving because of a family history of birth defects. Brennan told Englund that she was an excellent employee and they were pleased with her work. However, he told her that, because of her headaches resulting from the permanent fumes, he was going to place her on a medical leave until she obtained a second note from her doctor indicating she could work in an environment with permanent fumes. A letter sent to Englund by Brennan as a result of this conference stated, "When he writes that it is safe for you to return to work as a full-time stylist, we will be happy to reinstate you."

Brennan told Englund he would give her two weeks paid vacation (not yet earned) and would not contest any application for unemployment compensation. Brennan told Englund that he would try to find other work for her in his office or with business friends.

Despite having told Brennan she would not file for unemployment, Englund applied for benefits on October 31, 1983. According to Englund, at some point the unemployment office requested a note from her doctor in order for her to collect benefits. She testified that she obtained such a note, which indicated she could not do permanents but could do all the other duties of a stylist. No second note was produced at the hearing and there was no corroboration of any kind on the existence of such a note. Englund never gave Brennan any notes, other than the first one he requested.

Permanent fumes were always present in the salon and it was undisputed that the fumes caused Englund's headaches.

Englund carried her pregnancy to term and delivered a healthy baby boy.

## ISSUE

Is the ALJ's determination that G.X. did not discriminate against Englund on the basis of pregnancy or disability supported by substantial evidence?

## ANALYSIS

When reviewing an ALJ's decision, this court may reverse or remand if substantial rights have been prejudiced because the decision is "[u]nsupported by substantial evidence in view of the entire record as submitted * * *." Minn.Stat. § 14.69(e) (1984). *State v. Scientific Computers, Inc.,* 393 N.W.2d 200, 202 (Minn.Ct.App.1986). Substantial evidence can be defined as

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;

2. More than a scintilla of evidence;

3. More than some evidence;

4. More than any evidence; and

5. Evidence considered in its entirety.

*Id.* (citation omitted).

Under the Minnesota Human Rights Act, Except when based on a bona fide occupational qualification, it is an unfair employment practice:

\* \* \* \* \* \*

(5) For an employer \* \* \*, with respect to all employment related purposes \* \* \* not to treat women affected by pregnancy \* \* \* or disabilities related to pregnancy \* \* \* the same as other persons who are not so affected but who are similar in their ability or inability to work.

(6) For an employer with 50 or more permanent, full-time employees \* \* \* not to make reasonable accommodation to the known disability of a qualified disabled person unless the employer \* \* \* can demonstrate that the accommodation would impose an undue hardship on the business \* \* \*.

Minn.Stat. § 363.03, subds. 1(5), (6) (Supp. 1983). Englund argues that G.X. violated both of these sections.

■ Subsection (5) requires that a woman with a disability related to pregnancy must be treated as any other persons who are similar in their ability or inability to do work. The maternity leave records for G.X. show that a number of women worked at G.X. almost to delivery and then returned to work. Apparently none required special treatment so comparison with Englund's situation is not really possible. In the past, hair stylists at G.X. who suffered rashes or cuts had been allowed to discontinue permanents for a short period (one or two weeks) until they were healed. At the time Englund requested to be relieved from doing permanents, she was approximately seven months from delivery.

If we compare Englund with other workers needing relief from some duties we find, as the ALJ did, that if Englund's physician had clearly indicated her limitation, she might have been able to continue work by eliminating the giving of permanents. Even if Englund had produced a medical note indicating her limitations and Brennan insisted that she take a medical leave, it would not have been disparate treatment since the potential time period during which Englund would be unable to assume a significant portion of her duties was much longer than that of someone who had suffered a cut.

■ Subsection (6) requires an employer with 50 or more employees to make reasonable accommodations for the known disabilities of a qualified disabled person. G.X. argues that Englund was not a qualified disabled person, i.e.,

(1) with respect to employment, a disabled person who, with reasonable accommodation, *can perform the essential functions* required of all applicants for the job in question; \* \* \*.

Minn.Stat. § 363.01, subd. 25a (emphasis added). According to the employee handbook, a hair stylist's job duties included

haircutting and styling, permanent waving, coloring, bleaching, tinting, and other hair related services.

A stylist would not be hired if he or she could not give permanents. Englund therefore could not perform an essential part of the job with reasonable accommodation.

The statute also requires that accommodation be made for a "known disability" of a qualified disabled person. At the time Brennan placed Englund on a medical leave, the extent of her disability was not clear. Any form of accommodation was dependent upon the extent of exposure to permanent fumes that Englund could endure. Brennan did not fire Englund, but put her on leave until the extent of her disability was known, with the possibility of allowing accommodation, or until she gave birth.

In discrimination cases, the employee has the burden of establishing a prima facie case of disparate treatment. *State v. Metropolitan Airport Commission,* 358 N.W.2d 432, 433 (Minn.Ct.App.1984). Once the elements of a prima facie case are established, the burden shifts to the em-

ployer, who can assert any affirmative defenses it might have. As we indicated, Englund has failed to prove a prima facie case of discrimination and hence no defense is necessary.

■ Even if we were to assume a prima facie case, an employer can refuse employment to a person when the individual has a disability which poses a serious threat of harm to the disabled person or others. Minn.Stat. § 363.02, subd. 5. The burden of proof is on the employer. *Id.* Furthermore,

> as a general rule, to satisfy the standard of a "serious threat" to one's health or safety, the employer must establish that it relied upon competent medical advice that there exists a reasonably probable risk of serious harm.

*Lewis v. Remmele Engineering, Inc.,* 314 N.W.2d 1, 4 (Minn.1981) (citation omitted).

The doctor's opinion that Englund should not do permanents, implying she and/or her unborn child could be harmed, and Englund's own indication that the fumes gave her headaches, together with Englund's husband's concern with regard to possible birth defects substantially support G.X.'s decision to place Englund on medical leave until further clarification by Englund's physician.

### DECISION

Englund failed to prove a prima facie case of discrimination. Even if a prima facie case were assumed, respondent had sufficient evidence to support a "serious threat" defense. The ALJ's decision is affirmed.

Affirmed.