**Marlon Louis FOWLER,**
**Plaintiff-Appellant,**

v.

**BLUE BELL, INC., a corporation,**
**Defendant-Appellee.**

No. 83–7083.

United States Court of Appeals,
Eleventh Circuit.

July 30, 1984.

Hatchett, Circuit Judge, dissented and filed opinion.

Michael Quinn, Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant.

Charles A. Powell, III, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., W.T. Cranfill, Jr., Blakeney, Alexander & Machen, Charlotte, N.C., for defendant-appellee.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

JOHNSON, Circuit Judge:

The plaintiff-appellant, Marlon Louis Fowler, appeals a final judgment entered by the United States District Court for the Northern District of Alabama in favor of the defendant-appellee, Blue Bell, Inc., on Fowler's claim under Title VII of the Civil Rights Act. 42 U.S.C.A. § 2000e *et seq.* We affirm the decision of the district court because we are unable to find clearly erroneous its conclusion that the nondiscriminatory reasons that Blue Bell offered for rejecting the appellant were not a pretext for discrimination.

In March 1970, Fowler applied for a job at Blue Bell's Oneonta plant, which is engaged in the manufacture of clothing. The plaintiff testified that he had been told of openings in Blue Bell's shipping and cutting rooms. Fowler subsequently returned to the plant to check on the progress of his application on a number of occasions, but was unable to speak with any managerial personnel. Sometime in November 1970, Fowler went to the plant and was finally able to obtain an interview with someone in the personnel department, probably with Eldon Pierce. Although Pierce was not permanently assigned to the personnel department, he was working there temporarily in late 1970 because the permanent personnel manager had recently left the company. Fowler was not hired. On December 14, 1970, Fowler filed a charge with the EEOC in which he claimed that Blue Bell refused to hire him because he is black.

The EEOC notified Blue Bell of the charge in July 1971 and served its Field Director's Findings of Fact on the company in December 1971. In July 1972, the EEOC notified Blue Bell that its local office was forwarding the investigation file to the Commission for determination of reasonable cause and that it would notify the company as soon as the Commission rendered a determination. A year later, having heard nothing more from the EEOC or Fowler and concluding that the Commission had closed the matter, Blue Bell destroyed all its personnel records covering the period relevant to Fowler's application. In March 1975, however, the Commission issued a determination of reasonable cause, and it issued Fowler a right-to-sue letter in January 1976. Fowler filed this suit within 90 days.

The district court dismissed the claim under the doctrine of laches, holding that Fowler's delay in prosecuting his case prejudiced Blue Bell by causing it to destroy all personnel records from which it could have defended the suit. The Fifth Circuit reversed, *Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279–80 (5th Cir.1979), holding that any prejudice resulted from Blue Bell's own negligence in destroying the records in disregard of the EEOC's administrative regulations. The Court remanded the case for further proceedings.

On remand, the district court, on December 7, 1981, 92 F.R.D. 475, denied Fowler's petition for class certification. On January 6, 1983, the court entered a final judgment on the merits in favor of the defendant. The court found that Fowler had presented a prima facie case of discriminatory treat-

ment by showing that he is a member of a protected minority, that he applied for a job at Blue Bell for which he was qualified, and that Blue Bell continued to seek and hire applicants into positions for which Fowler was qualified after denying him a position. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The court held, however, that Blue Bell had met its burden of producing evidence of a legitimate reason for not hiring Fowler. *See id; Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). This evidence came primarily in the form of testimony from Eldon Pierce. Pierce testified that he did not remember actually interviewing Fowler, but that because of a notation on Fowler's application (which, despite the destruction of the personnel records, Blue Bell was able to locate a few weeks before trial), Pierce knew that he had handled the application. After reviewing Fowler's application in light of what he knew the 1970 hiring criteria to have been, Pierce testified that the applicant would not have been hired because his erratic work history, as well as his request for a wage of at least $1.80 per hour when the company was able to guarantee only the minimum wage of $1.60 per hour, indicated that "he wouldn't stay with us long." The trial court held that Fowler failed to meet his burden of persuading it by a preponderance of evidence that the proffered reason was a pretext for discrimination. The court therefore held that Fowler had not made out a case of discrimination under Title VII, and it entered final judgment in favor of the defendant, Blue Bell. Fowler filed a timely notice of appeal.

### A. *The Defendant's Intermediate Burden of Production*

 Fowler first contends that the district court erred in concluding that Blue Bell met its burden of producing evidence of a nondiscriminatory reason for not hiring him. The Supreme Court set forth the basic allocation of burdens in a Title VII discriminatory treatment case in which

there is not direct evidence of discrimination in *McDonnell Douglas Corp. v. Green, supra.* The plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. If the plaintiff succeeds, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant is able to do so, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the proffered reason or reasons were merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. In *Texas Dept. of Community Affairs v. Burdine, supra,* the Court clarified the nature of the defendant's intermediate burden. The Court pointed out that proof of a prima facie case creates a presumption of discrimination. "The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." 450 U.S. at 254, 101 S.Ct. at 1094. The defendant meets this burden if it produces evidence that "raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through introduction of competent evidence, the reasons for the plaintiff's rejection." *Id.* at 254–55, 101 S.Ct. at 1094–95 (footnotes omitted). At no time does the burden of *persuasion* shift to the defendant, and "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254, 101 S.Ct. at 1094. We have stated that "the defendant's burden of rebuttal is exceedingly light .... [T]he defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is 'merely one of production, not of proof.' " *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983).

 We have further held, however, that the nature of the defendant's selection process and of the reasons that he offers

affects the weight of his burden. Where the reasons that the employer offers for rejection are based on purely subjective factors, the defendant's burden is greater.

> The Supreme Court's requirement that "the defendant's explanation of its legitimate reasons ... be clear and reasonably specific" provides the plaintiff with some protection against the potential for discrimination inherent in a subjective selection process involving subjective job criteria .... Obviously, the more subjective the qualification sought and the more subjective the manner in which it is measured, the more difficult will be the defendant's task in meeting the burden imposed by *Burdine.*

*Robbins v. White-Wilson Medical Clinic, Inc.,* 660 F.2d 1064, 1067 (5th Cir. Unit B 1981) (citation omitted) (holding insufficient the reason that the plaintiff did not have a "pleasant personality" when it appeared that the defendant's personnel supervisor equated pleasant personality characteristics with white people);[1] *see also Harris v. Birmingham Board of Education,* 712 F.2d 1377, 1383–84 (11th Cir.1983) (holding insufficient the reason that one of the defendant's agents held the erroneous belief that the plaintiff did not want the job). The reason that the defendant offers in this case, although somewhat subjective, is not so incapable of objective evaluation as to render it inadequate to meet the defendant's burden of rebuttal. The defendant proffered the reason for not hiring Fowler that his application showed that he would not be likely to remain with the company for long. The defendant presented a reasonable explanation for its concern over this consideration—a stable workforce increases productivity and reduces training costs. Although the applicant's "stability" could have been evaluated in a subjective manner, it was not; Eldon Pierce drew his conclusions about the likelihood that Fowler would stay with Blue Bell from the objective evidence on his application regarding his prior job history and his requested starting wage. The district court was presented with more than a supervisor's own subjective evaluation of an applicant's personality or desire for the job. Consequently, Blue Bell's proffered reason is not so subjective that evidence supporting it cannot meet the defendant's production burden.

We now turn to the evidence the defendant presented in support of its explanation of Fowler's rejection. Evidence on this point came from the plaintiff's job application and from Eldon Pierce, who had been the temporary personnel manager in late–1970. The application showed that within the previous two years Fowler had held four different jobs in three different cities in three different states. He had moved from Oneonta to Cleveland to Detroit and back to Oneonta. He had remained at none of the last three jobs for more than six months, and he had stayed at his last job for less than three months. He listed as his reasons for leaving these jobs: "came home," "too dangerous," "came home to check with the service," and "not enough money for service." Fowler had been earning $1.60 per hour in July 1968 when he left one job because his wages were too low; his wages at the other jobs ranged from "$96 per week" to "3.31 per hour." Where the application asked the salary desired, Fowler put "at least $1.80 per hour."

Pierce testified that, although he did not remember Fowler or his application, based on what he knew the hiring criteria to have been in 1970, the applicant would never have been hired because his application revealed that he was unlikely to stay with the company very long. Fowler's history of shifting from job to job and from place to place indicated lack of stability. Moreover, Fowler had stated on the application that he desired at least $1.80 per hour and that he quit a job where he had earned $1.60 per hour because the pay was too low. Because Blue Bell would guarantee only the minimum wage of $1.60 per hour, Pierce

1. Decisions rendered after October 1, 1981, by a Former Fifth Circuit Unit B panel or en banc court are binding on this Court. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir. 1982).

testified that the application indicated to him that Fowler was unlikely to remain with the company.

Fowler claims that this evidence does not meet the *Burdine* burden because it constitutes a "present reason for past discrimination." It is true that the application and the Pierce testimony are not *direct* evidence of the reasons for which Blue Bell did not hire the plaintiff. But *Burdine* does not require that the evidence of the defendant's reasons for refusing to hire the plaintiff be direct. The Supreme Court stated only that "the defendant must clearly set forth, through introduction of *admissible* evidence, the reasons for the plaintiff's rejection." 450 U.S. at 255, 101 S.Ct. at 1094 (emphasis supplied). It is clear that the defendant has presented circumstantial evidence that raises a genuine issue of fact as to whether it discriminated against the plaintiff. A fact finder would be entitled to infer from Pierce's testimony that the reason for Fowler's rejection in 1970 was not a discriminatory motive on the part of Blue Bell but rather was Fowler's unstable work record, which indicated that he was unlikely to stay with the company for any length of time. Consequently, Blue Bell met its burden of production.

### B. *The Plaintiff's Proof of Pretext*

■■■■■ Fowler next claims that if Blue Bell did meet its burden by presenting evidence of nondiscriminatory reasons for rejecting his application, these reasons were merely a pretext for discrimination. The district court found that the reasons presented by the defendant were not pretextual. Such a finding of nondiscrimination is factual and must be reviewed under the clearly erroneous standard. *Pullman-Standard v. Swint,* 456 U.S. 273, 289, 102 S.Ct. 1781, 1790, 72 L.Ed.2d 66 (1982); *ACLU v. Rabun County Chamber of Commerce,* 698 F.2d 1098, 1110 (11th Cir. 1983).

In arguing that the court's findings were clearly erroneous, Fowler first attacks Blue

Bell's assertion that it refused to hire him because of his unstable work record. He claims that Pierce testified that the reasons for an applicant's having left his prior jobs would be important in evaluating his prior work history and that in the interview Pierce never asked Fowler about his reasons for leaving his prior jobs. Examination of the record indicates that Fowler's argument is based on an incorrect interpretation of Pierce's testimony. Pierce indicated that the reasons that an applicant had left his previous employment *could* be important but that in Fowler's case they were not because his work history had simply been too erratic and because he had been earning in his earlier jobs over twice the salary that Blue Bell could guarantee him. Pierce testified that merely reviewing the face of the application told him that Fowler was unlikely to be a stable employee and was unlikely to have remained satisfied with the pay at Blue Bell. Moreover, the reasons for leaving employment that Fowler actually listed on the application did nothing to combat the appearance of instability. Fowler also points to evidence from the EEOC's findings of fact that indicated that a white employee had been hired who had also held four jobs.[2] But Blue Bell did not claim that it failed to hire Fowler merely because he had held four jobs in the past. Rather, the defendant asserted that Fowler's past work history showed him to be an unstable employee on whom resources for training would be poorly invested.

Fowler attacked the claim that he had not been hired because he demanded "at least $1.80 per hour" by testifying that, in his interview with Pierce, Fowler told the supervisor that he would be willing to take $1.60 per hour because he was unemployed. There were a number of reasons why the trial court might have refused to give weight to Fowler's testimony regarding the details of his employment interview, which

---

2. The EEOC field report gave no information about the unnamed white employee except that

he had held four jobs before working at Blue Bell.

occurred thirteen years before the trial.[3] First, Fowler testified at his deposition that he never spoke to anyone at Blue Bell other than a secretary; he remembered the alleged interview with Pierce only on the eve of the trial. Moreover, at trial Fowler could not accurately remember what wage he had requested on his application form. He stated that he had written "$1.80 or open" when, in fact, he had demanded "at least $1.80." Even if in the interview Fowler had agreed to accept the minimum wage, Blue Bell's explanation for rejecting him would not necessarily be rendered a pretext. Pierce pointed out that Fowler had left a job in Oneonta two years earlier that paid $1.60 per hour for the expressed reason that the wage was too low. Since then Fowler had been paid significantly more than Blue Bell's starting rate. Pierce intimated that even if Fowler was willing to work for $1.60 initially, it was unlikely that he would remain satisfied with that wage for very long. Fowler also claims that Blue Bell's personnel records show that several white employees started at wages as high as $1.99 per hour, indicating that Blue Bell's claim that it could not have paid Fowler the $1.80 that he demanded was clearly a pretext. The trial testimony showed that wage rates at Blue Bell were on an incentive system. The trial court found that Blue Bell could not have *guaranteed* the plaintiff more than the minimum wage, although Fowler could theoretically have earned much more. This finding was supported by the evidence.[4]

Finally, Fowler urges that the district court's findings should be held clearly erroneous because the district court did not in its opinion discuss explicitly all of the facts in the record that Fowler feels supported his contention of pretext. This argument misunderstands the nature of appellate review under the clearly erroneous standard. This Court may reverse a district court's factual finding that is insulated by the clearly erroneous standard only if there is not substantial evidence in the record to support the finding and if, after reviewing the record as a whole, this Court is left with the definite impression that a mistake has been made. *Lincoln v. Board of Regents*, 697 F.2d 928, 939–40 (11th Cir.1983). The requirement that we review the record as a whole precludes any argument that merely pointing out facts that may cut against the district court's interpretation and that the court did not discuss explicitly is grounds for overturning the court's findings. If the appellant's contention were correct, appellate review of lower court factfinding would be reduced to a search of the record for facts that the district court neglected to mention. Instead, we must look at *all* the evidence to determine whether the district court's ultimate findings were clearly in error. Our review of the record indicates that the district court's finding on the issue of pretext was fairly supported by the evidence.[5]

### C. *Admission of EEOC Affidavits*

Fowler also claims that the district court erred in admitting affidavits that the EEOC collected during its field investigation. The appellant acknowledges that the actual report and findings of the commis-

---

**3.** Although the district court found that all of the witnesses were telling the truth about their recollections of what had occurred in 1970, the court did not find that all of those recollections were accurate or equally plausible.

**4.** The district court further buttressed its findings by reference to statistical evidence, which showed that during the time period in question Blue Bell's workforce had a higher percentage of black employees than were in the workforce of the county as a whole. Although not dispositive, this evidence does tend to support the conclusion that Blue Bell did not discriminate against blacks in hiring.

**5.** Because we affirm the district court's dismissal of Fowler's substantive claim, it is unnecessary for us to reach the issue of class certification. Were we to reach that issue, however, we would agree with the district court's determination that Fowler should not be certified as a class representative because of his "total failure to show any identification with or knowledge of other discriminatees who might make up a class." *Jamerson v. Board of Trustees of the University of Alabama*, 662 F.2d 320, 325 (5th Cir. Unit B 1981).

sion's field investigation are admissible under Fed.R.Evid. 803(8)(C), which excepts from the hearsay exclusion the results of federal investigation, but he contends that the affidavits that support those findings do not fall within 803(8)(C) and are therefore inadmissible hearsay. The contention is without merit because the district court admitted the affidavits not as evidence of the truth of statements that they contained but only for the limited purpose of showing the basis for the EEOC's findings. Consequently, the affidavits were not hearsay.

Because we find not clearly erroneous the district court's factual finding that the reasons Blue Bell offered for not hiring Fowler were legitimate and not a pretext for discrimination, the judgment of the district court is AFFIRMED.

HATCHETT, Circuit Judge, dissenting:

I dissent from the majority's opinion on two grounds. First, I disagree with the majority's holding that Blue Bell has articulated a legitimate, non-discriminatory reason for rejecting Fowler's application; and second, assuming Blue Bell's justifications for rejecting Fowler were properly presented, Fowler proved that the reasons were pretextual.

Subjective justifications cannot satisfy the employer's burden of producing legitimate, non-discriminatory reasons for an applicant's rejection. *See Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1557 (11th Cir.1983); *Harris v. Birmingham Board of Education*, 712 F.2d 1377, 1384 (11th Cir.1983). The majority holds that the reasons Blue Bell proffered for rejecting Fowler were subjective; nevertheless, it then determines that the subjective reasons were capable of objective evaluation and, therefore, were sufficient to fulfill the employer's burden of rebuttal. This analysis is wrong. Subjective criteria are always capable of objective evaluation, and the majority's decision, therefore, allows an employer in any case to use subjective reasons to fulfill the burden of production pursuant to *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101

S.Ct. 1089, 67 L.Ed.2d 207 (1981). The majority's decision is contrary to Eleventh Circuit precedent. *See Bell*, 715 F.2d at 1557; *Harris*, 712 F.2d at 1384.

Assuming, however, that Blue Bell's criteria for rejecting Fowler fulfilled its burden of rebuttal, Fowler proved that the criteria were pretextual. After an employer has satisfied the burden of rebuttal, one may still demonstrate discrimination by proving that the employer's legitimate, non-discriminatory reasons for the rejection are not the true reasons behind the rejection. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The Court stated "that [the applicant] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825–26, 36 L.Ed.2d 668 (1973).

The instant case exemplifies an indirect showing of pretext. To explain its criteria in rejecting Fowler, Blue Bell proffered the testimony of Eldon Pierce, a quality control manager at the Blue Bell plant for thirty years. Pierce was temporarily in charge of hiring when Fowler applied for a position at the plant. Pierce did not remember talking to Fowler, did not remember questioning Fowler about his alleged erratic work history, and did not remember asking Fowler about his starting salary. In total, Pierce did not remember Fowler or anything about his job application. No records showed the reason for Fowler's rejection. Pierce also testified that written qualifications for vacancies at the plant did not exist. Yet, Pierce remembered the hiring criteria that Blue Bell allegedly utilized in 1970 and speculated as to the reason Fowler was not hired.

Pierce testified that an erratic work history and a demand for pay which the company could not guarantee were sufficient reasons for Fowler's rejection. He, however, had never interviewed Fowler concerning his erratic work history or his sala-

ry demands. Even today, this court does not know why Fowler was not hired. We only know that a person employed by the company testified that if some unknown facts were considered in accordance with some unknown subjective criteria, these unknowns probably resulted in Fowler's rejection.[1] Moreover, the record reveals that Blue Bell hired individuals with erratic work histories and paid workers an amount greater than Fowler's application indicated he requested.[2] Pierce's testimony lacks credibility and is a pretext for the true reasons behind Fowler's rejection.

---

1. This testimony must be considered in light of the company's representation to our sister court that all records, including Fowler's application, had been destroyed. Only after the Fifth Circuit held that any prejudice resulting from the destruction of the records had to be borne by Blue Bell, did the records reconstruct themselves.

2. Fowler testified that he never talked to Pierce, that he explained to the interviewer why he had changed jobs, and that he told the interviewer he would accept less salary than he noted on the application.