**Velva WISE, Plaintiff,**

v.

**The MEAD CORPORATION, Defendant.**

**Civ. A. No. 83–166–1–MAC.**

United States District Court,
M.D. Georgia,
Macon Division.

Aug. 6, 1985.

J.A. Powell, Jr., Macon, Ga., for plaintiff.

W. Warren Plowden, Jr., Macon, Ga., for defendant.

OWENS, Chief Judge:

Velva Wise brought this Title VII suit against the Mead Corporation, alleging that she was fired because of her sex. A trial on the liability issue was held on May 31, 1985. This order comprises the court's findings of fact and conclusions of law.

### Findings of Fact

1. The Mead Corporation (Mead) is located in Macon, Georgia. Plaintiff, a female, began working at Mead in 1974. Until the incident in question occurred, she had an average work record.

2. On April 21, 1982, plaintiff and Tommy Pruitt, another Mead employee, were involved in a fight. Plaintiff was standing near the time clock talking to Petrona Roberts and Donnie Hatten when Pruitt approached plaintiff and made an obnoxious remark.

3. At trial Roberts testified: "Well, Tommy Pruitt walked out of the lunchroom and said something to Velva.... I don't remember what he said but I do remember that she told him, 'That'll be Ms. Wise to you.'" (Trial transcript at 25).

4. Hatten testified that:
Me and Velva Wise and Petrona Roberts, like I say, were talking and we had a

conversation going between us and Pruitt come up and kind of interrupted the conversation and got into the conversation with Velva Wise.... I don't really remember exactly what all we was talking about but there was—Mr. Pruitt referred to Velva as Belba or some, it wasn't her name, and she said, "That's Mrs. Wise to you...."

(Trial transcript at 28).

5. Plaintiff testified that "It was lunchtime and I had my back to the lunchroom speaking with Petrona Roberts and Donnie Hatten and Tommy Pruitt approached me from behind and started in being real belligerant." (Trial transcript at 60). She further testified that, "He [Pruitt] was being real belligerant and rude and I had asked him to leave me alone and I do remember he called me, 'Velma' and I said, 'My name is Velva but to you, it's Mrs. Wise.'" (Trial transcript at 61).

6. The testimony of Roberts, Hatten, and plaintiff shows that on this occasion Pruitt provoked the confrontation.

7. Plaintiff and Pruitt continued to argue and exchange words. Although the witnesses to the fight disagree on some details, there is no question that plaintiff scratched Pruitt on the arm and kicked him. At some point during this exchange, Pruitt held plaintiff by the wrist. Pruitt did not require medical treatment.

8. At the time in question, plaintiff was five feet and four and three-fourth inches tall and weighed one hundred five pounds. (Trial transcript at 62). By comparison, Pruitt was six feet tall and weighed two hundred five pounds. (Trial transcript at 91).

9. Following the fight, plaintiff told supervisor Eddie Berry that she had had a disagreement with Pruitt. Berry told her not to worry and that Mead would "forget it." She approached him three times and each time he told her not to worry. (Trial transcript at 63–64).

10. On the day after the fight the personnel administrator, Rebecca Lee, and supervisor Berry began an investigation of the incident. Lee and Berry interviewed plaintiff, Pruitt, and the witnesses to the fight.

11. As a result of the investigation, Mead decided that the plaintiff had attacked Pruitt and that Pruitt did not retaliate but instead tried to walk away. (Trial transcript at 7).

12. Mead also decided that plaintiff had used "abusive and uncivil" language. (Trial transcript at 9).

13. Plaintiff was terminated on April 23, 1982.

14. There have been at least four other fights between employees at Mead. These fights were between: (1) Paul Singleton and David Wynne, (2) Paul Singleton and Steve Clements, (3) Delois Spencer and Horace Butts, and (4) Thomas Boyd and James Thomas.

15. The only person fired for fighting besides the plaintiff was Singleton, who is male. However, Singleton was not fired until after his *second* fight.

16. Singleton's first fighting incident occurred in September, 1977. According to Mead's personnel records, Singleton pushed Wynne in the face because of a disagreement over banding steel. Both men were given disciplinary lay offs without pay for twelve days. (Plaintiff's exhibit 2).

17. Singleton's second fight was more serious than his first. The second fight occurred in November, 1978, a little over a year after the first one. Singleton and Steve Clements began arguing over Singleton's lunch. Singleton then hit Clements in the nose. Clements had to be taken to the emergency room. He suffered a broken nose and required stitches. (Trial transcript at 16–17; plaintiff's exhibit 1).

18. Mead fired Singleton on December 4, 1978. Clements received a written reprimand, a two-week disciplinary lay off without pay, and a ninety-day probationary period. (Plaintiff's exhibit 1).

19. A later fight at Mead involved employees Delois Spencer (female) and Horace Butts (male). That incident occurred on

March 26, 1979. Mead's personnel file shows that during an argument over a broom Butts grabbed Spencer by the arm and cursed her. There is no evidence that either Spencer or Butts was disciplined. (*See* plaintiff's exhibit 3 and trial transcript at 13).

20. The most recent incident of fighting at Mead—other than the fight at issue in this case—occurred on December 2, 1980, between James Thomas (male) and Thomas Boyd (male). Mead's memorandum on the incident states in part: "I [foreman Frank Woodham] saw T. Boyd ... drop a hammer in the direction of J. Thomas' feet.... J. Thomas then kneed T. Boyd in the groin area. T. Boyd then grabbed J. Thomas and pushed him to the floor." (Plaintiff's exhibit 5). Thomas and Boyd each received a written reprimand and a three-day disciplinary lay off because of their behavior. (*Id.*)

21. The conduct of plaintiff and male employees Boyd, Thomas, and Butts were of equal seriousness, but plaintiff and the men were treated differently: plaintiff was the only one fired for first-time involvement in a fight. Plaintiff's conduct was nearly identical to these three male employees' conduct notwithstanding the language she used. Mead's personnel records expressly state that Butts (male) also used cursing language. (Plaintiff's exhibit 3).

22. Circumstantial evidence shows that Mead treated plaintiff and the men differently because of their sexes. Mead intentionally discriminated against plaintiff because she is a woman.

### Conclusions of Law

 The ultimate question in a disparate treatment case is whether the defendant intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Intentional discrimination is an issue of fact. *Pullman-Standard v.*

*Swint*, 456 U.S. 273, 287–88, 102 S.Ct. 1781, 1789–90, 72 L.Ed.2d 66 (1982). It is difficult—if not impossible—for a plaintiff to produce direct evidence of discriminatory intent.[1] Therefore, plaintiffs may rely upon circumstantial evidence to prove discrimination.

 Circumstantial evidence should be analyzed under the three-step procedure of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a prima facie case of sex discrimination. *Id.* at 802, 93 S.Ct. at 1824. By establishing a prima facie case, the plaintiff creates a presumption of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). A plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if she shows (1) that she is a member of a protected class, (2) that she was qualified for the job from which she was fired, and (3) that the misconduct for which she was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984). The prima facie case of discrimination is established even if the plaintiff's replacement is also a member of the protected class. *Id.* Of course, women are protected by Title VII. 42 U.S.C.A. § 2000e–2(a)(1) (West 1981). In addition, Mead does not dispute that plaintiff was qualified for her job. Therefore, in the present case, plaintiff can establish a prima facie case by establishing that she was fired but men were retained for nearly identical conduct. *Nix*, 738 F.2d at 1186; *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir.1982) (Unit B). Plaintiff has clearly established that the conduct of plaintiff and three male employees (Boyd, Thomas, and Butts) were nearly identical, and therefore has clearly

---

1. For examples of cases in which direct evidence was presented, see *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir.1985); *Bell v. Birming-* *ham Linen Service*, 715 F.2d 1552 (11th Cir. 1983); *Lee v. Russell County Board of Education*, 684 F.2d 769 (11th Cir.1982).

met her burden of establishing a prima facie case.

 Next, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's [discharge]." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The defendant can satisfy its intermediate burden if it introduces admissible evidence that clearly sets forth the reasons for the plaintiff's termination. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. The burden of persuasion never shifts to the defendant. *Id.* at 253, 101 S.Ct. at 1093. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254, 101 S.Ct. at 1094. The defendant's burden is merely one of production, not one of proof. *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). The Eleventh Circuit has described the defendant's burden as "exceedingly light." *Id.* For a recent discussion of the defendant's intermediate burden of production, see *Fowler. v. Blue Bell, Inc.,* 737 F.2d 1007, 1010–12 (11th Cir.1984). In the present case, Mead has articulated two reasons for firing plaintiff: (1) she scratched and kicked Pruitt and (2) she used "abusive and uncivil" language. These reasons are sufficiently specific; therefore, Mead has met its burden of production.

■ The plaintiff may still prevail if she proves that the stated reasons were in fact a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. The Eleventh Circuit has observed that most disparate treatment cases turn on the plaintiff's ability to prove pretext. *Miles v. M.N.C. Corp.,* 750 F.2d 867, 870 (11th Cir. 1985). The plaintiff may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Stated another way, the plaintiff can prove that the defendant's reasons were "not the sole causes of the discharge but rather that discrimination made a difference in the de-

cision." *Conner v. Fort Gordon Bus Co.,* 761 F.2d 1495, 1500 (11th Cir.1985). The plaintiff can prove pretext by using comparative evidence. *Miles,* 750 F.2d at 870. In this case, a review of the facts proves beyond doubt that it is more likely that Mead was motivated by discrimination. Therefore, plaintiff has proved that Mead's proffered reasons for firing plaintiff are in fact pretext for discrimination.

Accordingly, plaintiff is entitled to immediate job reinstatement. The trial on all other damages issues will be scheduled in the near future.