**STATE of Minnesota, Respondent,**

v.

**SCIENTIFIC COMPUTERS, INC., Relator.**

**No. C3-85-2053.**

Court of Appeals of Minnesota.

Sept. 16, 1986.

Hubert H. Humphrey, III, Atty. Gen., Carl M. Warren, Helen G. Rubenstein, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Robert L. Hobbins, Pamela R. Saunders, Doresey & Whitney, Minneapolis, for relator.

Heard, considered and decided by RANDALL, P.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Scientific Computers, Inc. (SCI), appeals an administrative law judge's determination that it discriminated against Felicia Massey on account of race. This court initially discharged the writ of certiorari for failure of service. *State v. Scientific Computers, Inc.*, 384 N.W.2d 560 (Minn.Ct. App.1986). After granting SCI's petition for further review, the Minnesota Supreme Court reversed discharge of the writ and ordered the matter remanded for disposition of the appeal on the merits. *State by Johnson v. Scientific Computers, Inc.*, 388 N.W.2d 748 (Minn.1986). On remand, we affirm the ALJ's decision.

## FACTS

SCI is in the business of direct mailing, business systems and associated activities. Its facility is located in Minnetonka. In 1982, with a total of 265 employees, SCI employed three minority people, two of whom were black. In 1983, with a total employment of 227, SCI employed no minorities. In 1984, with a total employment of 243, SCI employed two minority persons, neither of whom was black.

On August 25, 1982, Felicia Massey, a 23-year-old black woman, applied for a position in SCI's bindery department, which employs approximately 50 people. Massey had lived in a variety of locations during her youth because her father was in the military service. In 1978 she graduated from high school in Alabama and then attended two years of college in Tennessee. During the summer of 1980, she worked at an army post in Alaska. She remained in Alaska employed as a day-care worker until June 1981, when she returned to Alabama to have a child. In July 1982 Massey moved to Minnesota to live with Angela Bivens, a friend from college, and to seek employment.

Bivens, who was already employed in SCI's bindery department, gave Massey an employment application and then gave the completed application to Ken Johnson, her supervisor. Massey spoke with Johnson on several occasions over the course of a month, and on each occasion Johnson told Massey he was not hiring and had no opening for someone with her background. Admittedly fearful of a charge of racial discrimination and due to pressure from Bivens, Johnson finally agreed to interview Massey, even though he had already determined that under no circumstances would he offer Massey a position.

On September 24, 1982, Bivens and Massey met with Johnson in an open area of the bindery. After Bivens introduced Massey, Bivens and Johnson talked for ten minutes. Johnson did not interview Massey privately or direct any questions to her.

He did not ask Bivens to leave. He pointed around the bindery and indicated what work was being done in the area. He told Massey he was not hiring and thanked her for visiting. On October 1 Massey called Johnson and was again told that the bindery department was not hiring.

In reality, Johnson hired 16 white bindery workers between August 25, the date Massey submitted her application, and September 24, the date of the interview. From then until October 14, 1982, Johnson hired three more white bindery workers.

The Department of Human Rights filed a complaint against SCI, asserting a claim of company-wide disparate treatment in employment based on race, coupled with an individual claim for relief by Massey. A hearing was held before an ALJ at which Johnson testified that he did not hire Massey because she "bounced all over."

> There's a lot of people not working in the State of Minnesota and when you see a person going from state to state, it indicates to me that I'm not going to have a long term employee.

Based on the testimony elicited and evidence submitted, the ALJ made numerous findings and concluded:

> 5. [SCI] discriminated against Felicia Massey in employment on the basis of her race in violation of Minn.Stat. § 363.-03, subd. 1(2)(a) (1984), and the reason articulated by [SCI] for failure to hire [her] was a pretext for racial discrimination.

> *       *       *

> 10. During 1983 and 1984, [SCI] engaged in a pattern or practice of racial discrimination against Blacks in employment at its Minnetonka facility in violation of Minn.Stat. § 363.03, subd. 1(2)(a) (1984).

SCI appeals only that portion of the ALJ's decision pertaining to Massey.

## ISSUE

Does substantial evidence support the ALJ's conclusion that the reason given by SCI for not hiring Massey was a pretext for discrimination?

## DISCUSSION

On review of an ALJ's decision, this court may reverse or remand if substantial rights have been prejudiced because the decision is "[u]nsupported by substantial evidence in view of the entire record as submitted * * *." Minn.Stat. § 14.69(e) (1984). "Substantial evidence" has been defined as

> 1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;
> 2. More than a scintilla of evidence;
> 3. More than some evidence;
> 4. More than any evidence; and
> 5. Evidence considered in its entirety.

*Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984).

Under the Minnesota Human Rights Act, it is an unfair employment practice for an employer because of race "to refuse to hire or to maintain a system of employment which unreasonably excludes a person from seeking employment * * *." Minn. Stat. § 363.03, subd. 1(2)(a). In adjudicating cases brought under the Act, the Minnesota Supreme Court has adopted the three-part test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Danz v. Jones*, 263 N.W.2d 395 (Minn.1978) (analysis first adopted); *Sigurdson v. Isanti County*, 386 N.W.2d 715, 719–20 (Minn. 1986).

The *McDonnell Douglas* analysis consists of a prima facie case, an answer by the employer, and a rebuttal. *Sigurdson*, 386 N.W.2d at 720. In this case the parties agree that the first of these three requirements has been met: the department established a prima facie case by showing that (1) Massey is a member of a protected class; (2) she applied for and was qualified for employment with SCI; (3) she was rejected for the position; and (4) SCI continued to seek applicants after Massey's rejec-

tion. *See Fisher Nut Co. v. Lewis ex rel. Garcia,* 320 N.W.2d 731, 734 (Minn.1982).

At the second stage, the employer must present evidence of some legitimate, non-discriminatory reason for its actions. *Sigurdson,* 386 N.W.2d at 720. The employer's burden of rebuttal is exceedingly light, and at no time need it prove "that it was actually motivated by the proffered reasons." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The sufficiency of the employer's evidence nevertheless should be evaluated by the extent to which it "serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Sigurdson,* 386 N.W.2d at 720 (quoting *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95).

The ALJ found that, based solely on Johnson's testimony, SCI met its burden by claiming that it refused to hire Massey because of her history of geographic instability. SCI's stated goal is to hire long-term employees. Geographic stability, if accompanied by job stability, is logically related to this legitimate business purpose. *See Fowler v. Blue Bell, Inc.,* 737 F.2d 1007 (11th Cir.1984) (employer could legitimately refuse to hire black job applicant based on his unstable work record, which revealed he had held numerous short-term jobs and had moved a number of times). It is questionable, however, whether geographic instability alone provides a legitimate reason for refusing to hire an applicant; in *Fowler,* geographic instability was accompanied by job instability.

Moreover, the nature of an employer's selection process and of the reasons proffered by it affects the weight of its burden. "[T]he more subjective the qualification sought and the more subjective the manner in which it is measured, the more difficult will be [an employer's] task in meeting the burden imposed." *Id.* at 1011 (quoting *Robbins v. White-Wilson Medical Clinic,*

*Inc.,* 660 F.2d 1064, 1067 (5th Cir.1981)). Subjective and vague criteria may thus be insufficient reasons given by an employer for its failure to hire because such criteria do not allow a reasonable opportunity for rebuttal, and the plaintiff is left without any objective criteria to point to in order to show pretext. *See Miles v. M.N.C. Corp.,* 750 F.2d 867, 871 (11th Cir.1985).

Although SCI's proffered nondiscriminatory reason is objective on its face, there is ample evidence of its subjective enforcement. The only evidence offered by SCI is Johnson's testimony that he did not hire Massey because she "bounced all over." Nonetheless, during the interview he did not inquire further about her background or ask about her reasons for moving from state to state. Such a subjective evaluation involving a white supervisor provides a ready mechanism for racial discrimination. *See id.,* 750 F.2d at 871 (and cases cited therein).

The subjectivity of SCI's hiring process is further illustrated by a finding made by the ALJ in connection with the claim of a pattern or practice of discrimination:

9. With respect to the bindery department * * * the department managers since 1982 have not employed any objective standards in making hiring decisions. * * * Hiring decisions in the bindery department are made on a *totally subjective basis* by the managers. Neither previous training, nor job stability is a determining factor in employee selection for work in the bindery department.

(Emphasis added). SCI contends this evidence should not now be considered because the ALJ did not expressly rely on it to support its determination of individual discrimination against Massey.

Invariably, when claims of pattern and practice and of disparate individual treatment are combined, there will be some overlap. In determining whether substantial evidence supports a conclusion, the entire record must be examined. Evidence of habitual employment patterns and practices may constitute significant corroborative evidence in the context of a claim of individu-

al discrimination. *See* Minn.R.Evid. 406. We consider the evidence pertaining to SCI's lack of objective hiring standards as further support for the ALJ's conclusion that Massey had been discriminated against on account of race. We also consider the lack of objective hiring criteria as indicative of the credence to be given SCI's proffered nondiscriminatory reason.

The ALJ concluded that SCI's proffered reason was legitimate, but that it had discriminated against Massey on account of race because that reason was merely a pretext for discrimination. At this third stage, the department may sustain its burden "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Sigurdson*, 386 N.W.2d at 720 (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095).

The ALJ concluded that there was sufficient evidence of pretext because, at about the same time that Massey had been rejected, SCI hired "a number of non-minority persons whose work histories were either non-existent or demonstrated an instability as pronounced as that of [Massey's]." SCI asserts that the ALJ's comparison of occupational instability with geographic instability was error. We disagree. Occupational instability and geographic instability are "of comparable seriousness" where both indicate that an employee might not remain on the job. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825 (pretext can be established by "evidence that white employees involved in acts * * * of comparable seriousness to the 'stall-in' were nevertheless retained or rehired" where employer had refused to rehire a black employee after he had participated in a stall-in); *see also Miles*, 750 F.2d at 870–72 (comparative evidence may be used to prove pretext). Inasmuch as SCI's stated goal when making its hiring decisions is to find long-term employees, equating geographic instability with occupational instability was not error. Substantial evidence supports the ALJ's conclusion that SCI's

proffered reason for rejecting Massey was merely a pretext for discrimination.

Finally, SCI contends that the statistical proof relied upon by the ALJ was fatally flawed. Because this evidence was merely corroborative and because the ultimate conclusion reached by the ALJ is supported by other substantial evidence, we need not decide this issue.

### DECISION

The ALJ's conclusion that SCI discriminated against Massey on account of race is affirmed.

Affirmed.