**STATE** of Minnesota, by **Kathryn R. ROBERTS**, acting Commissioner, Department of Human Rights, Respondents,

v.

**SPORTS & HEALTH CLUB, INC.,** d/b/a LaSalle Sports & Health Club et al., Relators.

No. C7–84–1767.

Court of Appeals of Minnesota.

April 9, 1985.

Hubert H. Humphrey, III, Atty. Gen., Elizabeth V. Cutter, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Steven D. Jamar, Clyde F. Anderson, Minneapolis, for relators.

Heard, considered and decided by POPO-VICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

The Sports & Health Club, Inc. appeals from an administrative law judge's order requiring it to cease and desist from discriminating on the basis of sex in violation of Minn.Stat. § 363.03, subd. 1(2)(a) (1982) and awarding $2,000 in punitive damages to Paul Bedor. The Sports & Health Club

contends that Bedor failed to establish a prima facie case of sex discrimination because he was not qualified for the job for which he applied, and that punitive damages cannot be awarded because compensatory damages were not awarded. We reverse.

## FACTS

Paul Bedor was a member of the Sports & Health Club and frequented the LaSalle Court location. He wears a steel brace on his lower left leg and foot because of cerebral palsy.

In July of 1983, the LaSalle Club was taking applications for a receptionist position and Bedor applied. Bedor gave his application and resume to the head receptionist, Jackie Ulmer. She told him his application would be placed on a list for consideration.

A full-time receptionist at the Sports & Health Club answers telephones, checks members in, performs other desk oriented tasks, and, when needed, leads exercise classes for members. A modest amount of physical ability and the full use of one's limbs is a requirement for leading exercise classes. A full-time receptionist is given one and a half weeks of training to enable him or her to lead classes.

After submitting his application, Bedor inquired about his status regularly and in August of 1983 Ulmer told Bedor his name was "next on the list to be hired as receptionist." Shortly thereafter, Ulmer left her position as head receptionist and was replaced. When Paul Bedor asked her replacement, Debbie, about his application, she told him she would have to speak to one of the owners, Mark Crevier. Approximately one week later, Debbie told Bedor that Crevier would not consider him as a receptionist because he was male and Crevier felt women do a better job as receptionist.

Crevier does not recall telling Debbie to tell Bedor that he couldn't get the job because he was male instead of female; he said Debbie could have misunderstood him. He also said he did not interview Bedor and did not even know Bedor applied.

The Sports & Health Club has had at least four male receptionists in the past, including one member of the Minnesota Vikings football team. It had no male receptionists at the time of the hearing.

Bedor filed a charge of discrimination with the Minnesota Department of Human Rights alleging that the Sports & Health Club discriminated against him on the basis of sex. After the charge was served on the Club, Arthur Owens, the Club's president, responded by letter saying:

> This was a judgment call based on the observation Mr. Bedor could not do the job as we perceive it to be done. Unfortunately the message was passed to him as we would prefer women rather than telling him the real reason which was the physical limitation. We need quicker acting and responsive receptionists.

Bedor then filed an amended charge alleging both sex and disability discrimination. After a hearing, the administrative law judge found that Crevier did not interview Bedor or make any inquiry about the extent of Bedor's disability. He concluded that the Sports & Health Club discriminated against Bedor on the basis of sex when it refused to consider him for employment. He did conclude that disability discrimination was not proven because the ability to perform exercises and lead exercise classes is a bona fide occupational qualification for the job of full-time receptionist. Finally, he concluded that the Sports & Health Club proved that Bedor would not have been hired even in the absence of discriminatory conduct. However, the administrative law judge ordered the Sports & Health Club to cease and desist discriminating on the basis of sex and to pay Bedor $2,000 in punitive damages.

## ISSUES

1. Did the Department of Human Rights establish a prima facie case of discrimination on the basis of sex?

2. Is an award of punitive damages proper in the absence of an award of compensatory damages where the job had bona

fide physical requirements which the job applicant could not meet?

## ANALYSIS

The Sports & Health Club contends that Bedor failed to establish a prima facie case of sex discrimination because he was not physically qualified for the full-time receptionist job. The State maintains the prima facie case was established when Owens admitted Bedor was told by a receptionist that he was not hired because he was not a woman. The State argues that the Club cannot now avoid the consequences of its sexual discrimination by citing Bedor's physical disability because Crevier did not know of Bedor's disability at the time Bedor was rejected.

■ Under Minnesota law it is an unfair employment practice for an employer to refuse to hire because of sex except when the refusal is based on a bona fide occupational qualification. Minn.Stat. § 363.03, subd. 1(2)(a) (1984). The Minnesota Supreme Court has applied principles developed in the adjudication of claims arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e) (1976) in construing the Minnesota Human Rights Act. The beginning point for discussion of cases brought under Title VII is generally a three part analysis consisting of a prima facie case, an answer and a rebuttal. This analysis was established by the Supreme Court in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and adopted by Minnesota in *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 441 (Minn. 1983). The administrative law judge in this case chose not to use the *McDonnell-Douglas* analysis. It should have.

■ The first part of the three part analysis requires Bedor to establish a prima facie case of illegal discrimination. In *McDonnell-Douglas,* the Supreme Court adopted a four part test which allows circumstantial evidence to be used to establish the prima facie case. However, the court specifically noted that the four part test would not necessarily be applicable to every allegation of employment discrimination because of varying factual circum-

stances. *McDonnell-Douglas,* 411 U.S. at 802, n. 13, 93 S.Ct. at 1824, n. 13.

■ Until recently, discrimination was relatively open and easy to recognize. As enforcement of the civil rights laws has progressed, the discrimination has become increasingly sophisticated. Now it is rare to find an employer who defies the civil rights laws by openly refusing to hire members of a protected class. *Ramieriz v. Sloss,* 615 F.2d 163, 168 (5th Cir.1980).

> In the rare situation in which the evidence establishes that an employer openly discriminates against an individual it is not necessary to apply the mechanical formula of *McDonnell-Douglas* to establish an inference of intentional discrimination; the showing has already been made directly.

*Id.* In this case Bedor claims he established a prima facie case. He testified that he was told by Debbie that Crevier would not consider him as a receptionist because he was male and Crevier felt that women do a better job as receptionists. Owens acknowledged that Bedor was told by Debbie that the Sports & Health Club preferred women as receptionists. However, Owens argued that Debbie used that choice of words out of a concern for not hurting Bedor's feelings and entirely on her own. Instead of mentioning his cerebral palsy as the reason he was not hired, she chose to tell Bedor that the club now had a policy of preferring women as receptionists.

■ Owens testified that Debbie's intention was not to discriminate against Bedor on the basis of his sex, and if she inadvertently did, he and his club should not be responsible for her concept of the most sympathetic way to turn Bedor down. It would have been better practice for Debbie to have been honest with Bedor and point out that his handicap was incompatible with the job. However, her misguided choice of words does not necessarily make the club liable. The record shows the State did not prove that Debbie had ever been told by anyone in authority not to hire Bedor because he was a man, did not prove that the club ever ratified her statement,

and did not prove she acted in a managerial capacity. We distinguish the case of *City of Minneapolis v. Richardson*, 307 Minn. 80, 239 N.W.2d 197 (1976), wherein Minneapolis was held liable for acts of police officers. There was no similar showing of agency here.

■ The State argues that once appellant admitted that Debbie had told Bedor he would not be hired because he was a man, there was a prima facie case of discrimination. Proof of that statement does not relieve the State of its burden of showing agency. Respondent did not call Debbie to the stand, and thus Crevier's testimony that he did not tell Debbie what to say is unrefuted. The State did not produce any other evidence to refute appellant's claim that Debbie acted spontaneously and on her own and out of sympathy for Bedor.

■ Assuming that Bedor established a prima facie case of sex discrimination, the burden then shifted to the Sports & Health Club "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell-Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. The Sports & Health Club met its burden of production by proving that Bedor was not hired because he was physically unable to perform the job. The administrative law judge so found. The Sports & Health Club answered Bedor's prima facie case.

■ Under the third step in the *McDonnell-Douglas* analysis, Bedor must now demonstrate that the reason given by the Sports & Health Club is a pretext, and must go on to prove that the Club intentionally discriminated against him. *See Hubbard*, 330 N.W.2d at 443. Bedor has the ultimate burden of persuading the court, by a preponderance of the evidence, that the Sports & Health Club intentionally discriminated against him. *See Id.* 330 N.W.2d at 442, n. 12. This burden may be sustained "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (Quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256,

101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). Respondent failed to sustain this burden.

■ The administrative law judge found that Bedor was not interviewed by Crevier and Crevier made no inquiry as to the extent of Bedor's disability. He concluded therefore that the Sports & Health Club must have discriminated on the basis of sex. The administrative law judge erred by not holding Bedor to the burden of proof required by *Hubbard* and by concluding that the Sports & Health Club discriminated on the basis of sex because Crevier did not interview Bedor or inquire about his disability. The administrative law judge arguably assumed that Debbie's statement, standing alone, was a prima facie case. Crevier testified he did not interview Bedor because he didn't even know that he applied, and Crevier continued to deny that he authorized Debbie to tell Bedor he had been refused because he was a man.

■ Under *Hubbard*, Bedor may attempt to prove that his physical disability was only a pretext by persuading the administrative law judge that sex discrimination rather than physical limitations motivated the Sports & Health Club not to hire him. On these facts, it is more likely that the disability rather than sex discrimination motivated the Sports & Health Club. The Club had hired male receptionists in the past. Undeniably, Bedor was physically unable to perform part of the receptionist job. The Sports & Health Club's explanation for Debbie's statement is credible.

■ The administrative law judge specifically found that the ability to perform exercises and lead exercise classes is a bona fide occupational qualification for the job of full-time receptionist, and that Bedor could not do all the physical activities.

Bedor failed to meet the burden imposed upon him by the final step of the three-step *McDonnell-Douglas* analysis. Accordingly we hold that there is not substantial evidence in view of the entire record as submitted to support the administrative law judge's conclusion that Sports & Health Club discriminated against Bedor on the

basis of sex when it refused to consider him for employment in August of 1983. *See* Minn.Stat. § 14.69 (1984).

Since we find Bedor did not meet his burden of proving sex discrimination, there is no basis for the punitive damage award. The award of punitive damages is therefore reversed. Thus we do not address the issue of whether punitive damages could be awarded even in the absence of compensatory damages.

## DECISION

Respondent did not meet its burden of establishing sex discrimination. Appellant's reason for not hiring the job applicant was bona fide and not a pretext.

Reversed.