**Rick A.L. RIDLER, Respondent,**

v.

**OLIVIA PUBLIC SCHOOL SYSTEM NO. 653, Appellant,**

**Linda C. Johnson, Commissioner, Defendant.**

No. C8–88–801.

Court of Appeals of Minnesota.

Dec. 13, 1988.

John E. Mack, New London, for respondent.

Carol O'Toole, Minneapolis, for appellant.

Heard, considered and decided by NORTON, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

NORTON, Judge.

Respondent Rick Ridler timely filed a charge of sex discrimination with the Minnesota Department of Human Rights on August 30, 1985. The charge was later withdrawn and the matter was heard de novo by the trial court. Ridler alleged that Olivia Public School, Independent School District No. 653 (school), discriminated against him on the basis of sex and marital status in violation of the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363.03, subd. 1(2)(a), (2)(c), (4)(a) (1984). The trial

court dismissed the marital status claim, but found that the school intentionally discriminated against Ridler when it refused to interview or hire him on the basis of his gender. Ridler was awarded damages and attorney fees by the trial court. We affirm and allow respondent to submit a request for costs and attorney fees on appeal.

## FACTS

Ridler applied for the position of cook with the school in early August of 1985 in response to a newspaper advertisement. Applicant Ridler received no information concerning the criteria to be used by the school in determining who would be interviewed or hired for the position. He went to the school in person to apply for the position. The employment application contained requests for information such as "husband's occupation," and "if married, number of children."

Ridler filled out the application, listing his experience in cooking, which included two years of post-secondary education at the Willmar Area Vocational Technical Institute where he completed Chef's Training I and II. He listed his experience preparing food for large numbers, both in the Vo–Tech training program and as a member of the Olivia National Guard. Ridler also listed several prior jobs not related to cooking.

Fourteen applications were received for the full-time position of main entree cook in the school's hot lunch department. Head Cook Karen Stoeckman and School Board Chair Virginia Draheim each independently reviewed the applications. Next, they briefly met with Superintendent Martin Duncan to discuss "what [they] were looking for." Three applicants were male and eleven were female. The three male applicants were Daniel Marks, Scott Randleman and respondent. The school chose to interview three female applicants: Sue Mages, Phyllis Minkel and Linda Paulsen. The chairperson, head cook and superintendent conducted the interviews as a team. Applicant Linda Paulsen was hired and began working in early September of 1985.

The record below indicates that certain jobs in the school were segregated by sex. For example, the school had never hired a male cook in its history. Nor had it hired a male substitute cook until this action was filed. The school testified that its five cooks were all female, the four janitors all male. The 14 teacher aides and five secretaries were all female. Finally, on direct examination, the Head Cook referred to one of the positions in the kitchen as the "sandwich girl." In consideration of such testimony and in examining the credibility of the school's witnesses, the trial court observed an "intentional, but subtle discriminatory attitude that qualified male cooks do not belong in the public school kitchen."

At trial, the school produced criteria it claims were used to determine who would be interviewed and hired. The school alleged that Ridler was denied an interview because he did not meet the criteria. However, it had little evidence to show that any rational hiring criteria were consistently used in the hiring process. The school's testimony in this regard was found to lack credibility.

There was explicit evidence regarding the hiring process as a whole to show that applicant Ridler was treated disparately on the basis of his sex. The evidence relating to the school's disparate treatment of male and female applicants was dispositive. Paulsen, like the other female applicants interviewed, had no formal training in cooking. Her cooking experience was limited to substitute work at the school, and volunteer work at her church. The trial court found that Ridler's qualifications were at least equal to, if not greater than, the qualifications of Paulsen.

The trial court found that the school's justifications for refusing to interview and hire Ridler did not withstand rational analysis and were not credible; rather, it found that gender was a principal factor used by the school in deciding which applicants would be interviewed and ultimately hired. The school's "after-the-fact rational-

izations" were found insufficient to dispel the inferences and explicit evidence of intentional sex discrimination. The trial court found that Ridler established by a fair preponderance of the evidence that the school's failure to interview and hire him was due to his male gender.

## ISSUES

1. Does the Minnesota Human Rights Act, chapter 363, protect males from gender based employment discrimination?

2. Did the trial court clearly err in finding that appellant failed to interview and hire respondent for the cook position based on his gender in violation of Minn.Stat. § 363.03, subd. 1(2)(c) (1984)?

## ANALYSIS

*Standard of Review*

On review of a trial court's judgment in an employment discrimination case, this court must decide whether the findings of fact are clearly erroneous. Minn.R.Civ.P. 52.01; *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 441 (Minn. 1983). The trial court's findings will not be disturbed if they are reasonably supported by evidence in the record considered as a whole. *Id.*

*Applicable Statute*

The MHRA provides:

> Except when based on a bona fide occupational qualification, it is an unfair employment practice:
>
> \* \* \* \* \* \*
>
> (2) For an employer, because of \* \* \* sex, marital status \* \* \*
>
> (a) to refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment;
>
> \* \* \* \* \* \*
>
> (c) to discriminate against a person with respect to [hiring] \* \* \*.
>
> \* \* \* \* \* \*
>
> (4) For an employer \* \* \* to
>
> (a) require the person to furnish information that pertains to \* \* \* sex, marital status \* \* \*.

Minn.Stat. § 363.03, subd. 1(2)(a), (2)(c), (4)(a) (1984).

The trial court found that the Olivia Public School had engaged in "disparate treatment" of Ridler based on his gender. In analyzing such cases brought under the MHRA, the Minnesota Supreme Court applies principles developed in the adjudication of claims arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. (1982), and set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *Hubbard,* 330 N.W.2d at 441.

Minnesota courts have specifically adopted, and the trial court correctly applied, the *McDonnell Douglas'* three-part evidentiary test as an aid to resolving disparate treatment claims. *See, e.g., Anderson v. Hunter, Keith, Marshall & Co., Inc.,* 417 N.W.2d 619, 623 (Minn.1988). First, a plaintiff must establish a prima facie case of disparate treatment based upon a statutorily prohibited discriminatory factor. Second, the burden shifts to the defendant to produce a legitimate nondiscriminatory reason for the plaintiff's treatment. Third, if the defendant can articulate legitimate reasons, the plaintiff has the final burden of proving the asserted legitimate reasons are pretextual. *Anderson,* 417 N.W.2d at 623–24 (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981)).

*Part One, Prima Facie Case*

The specific elements of the *McDonnell Douglas* formulation of a prima facie case must be modified for varying factual patterns and employment contexts. *Sigurdson v. Isanti County,* 386 N.W.2d 715, 720 (Minn.1986). Thus applied here, respondent must demonstrate that: (1) he is a member of a protected class; (2) he

sought and was qualified for opportunities that the employer was making available; (3) he, despite his qualifications, was denied these opportunities, and (4) after this denial, these opportunities were given to other persons with qualifications equal to or less than his. *See id.*

■ The only element of Ridler's prima facie case which appellant contests is the first, namely whether Ridler belongs to a protected class. Appellant argues that Ridler did not establish a prima facie case because he is a male and is not afforded protected class status under precedent construing Title VII and MHRA sex discrimination claims. We believe there is no basis to this argument.

The trial court found that Ridler was a member of a protected class, stating that under the MHRA, "gender based employment decisions are prohibited regardless whether the victim is male or female." The trial court made this finding with little discussion, due to the fact that the MHRA does not use the term "protected class," and that the statute's clear language applies to discrimination against either sex. Neither Title VII nor the *McDonnell Douglas* test, specifically use this term. There is no case law in Minnesota defining this term. In fact, it has developed generally in federal cases involving affirmative action programs.

This appeal does not involve an affirmative action program for female applicants, but rather direct discrimination against a male applicant in violation of statute. Thus, the issue here is not whether Ridler belongs to a class protected under an affirmative action program, but simply whether he is protected by statute from intentional discrimination.

Title VII, which guides us in interpreting the MHRA, clearly protects males from employment discrimination.

The *provisions of Title VII* respecting gender-based discrimination, however, *are neutral; they prohibit discrimination against men,* just as the analogous prohibition of racial discrimination makes unlawful discrimination against whites as well as blacks.

(emphasis added) *La Riviere v. Equal Employment Opportunity Commission,* 682 F.2d 1275, 1278 (9th Cir.1982). "In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1198 (7th Cir.), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). *See also Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385 (5th Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971) (being female was not a bona fide occupational qualification for job of flight attendant and employer's refusal to hire males solely because of their sex constituted violation of 1964 Civil Rights Act).

Further, this court has implied that males are a protected class for purposes of maintaining a prima facie claim of disparate treatment under the MHRA. *See State by Roberts v. Sports & Health Club, Inc.,* 365 N.W.2d 799 (Minn.Ct.App.1985) (this court assumed that the male plaintiff had proven a prima facie case, and membership in a protected class was not at issue, and held that the employer had legitimate nonpretextual reasons for not hiring plaintiff); *Johnson v. Ramsey County,* 424 N.W.2d 800, 808 (Minn.Ct.App.1988) (this court recognized that the male employee's membership in a protected group was the first element of his prima facie claim of sexual harassment under the MHRA, chapter 363).

Minnesota promotes a public policy fostering "the employment of all individuals in this state in accordance with their fullest capacities, regardless of their race, color, creed, religion, or national origin, and to safeguard their rights to obtain and hold employment without discrimination. Such discrimination threatens the rights and privileges of the inhabitants of this state and menaces the institutions and foundations of democracy." 1955 Minn.Laws ch.

516, § 1. This declaration of policy guides our interpretation and application of the current MHRA.

■ Accordingly, both sexes have a right to obtain and hold employment without discrimination under the policy of the MHRA. It is clear to us, and we hold, that both males and females fall within a "protected class" for purposes of prosecuting claims of intentional discrimination in employment in violation of the MHRA.

■ The trial court correctly found that Ridler belongs to a protected class and that he had proven the first element of his prima facie case. Appellant contests no other elements of respondent's prima facie case. Respondent, accordingly, has proven his prima facie case of disparate treatment based upon a statutorily prohibited factor.

*Parts Two and Three of the McDonnell Douglas Analysis*

■ In determining whether the trial court's findings of disparate treatment are supported by the evidence in the record as a whole, we must examine the second and third parts of the *McDonnell Douglas* test. The second and third parts of the *McDonnell Douglas* analysis were expressly cited by the trial court in its findings. It was found that the school offered several reasons for its failure to interview respondent and its ultimate failure to hire respondent. However, all of the stated reasons were "suspect" and failed "the test of credibility." There is ample evidence in the record to support these findings.

After the charge of sex discrimination was made, the school asserted it used the following criteria in determining whom to interview and hire: (1) previous experience as a cook; (2) previous experience as a cook for a large number of people; (3) previous supervisory experience in food preparation operations; (4) previous employment in the school district; and (5) applicant's work record and dependability. The school claimed that male applicants Ridler and Randleman were less qualified under the above criteria and thus were not chosen for interviews or hired.

Here, the school's articulated criteria presented some evidence that its actions were related to legitimate business purposes. *See Sigurdson*, 386 N.W.2d at 720. The school's explanation that Ridler was less qualified according to the above criteria, if true, might have been legally sufficient to justify a judgment for the school. *See Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094. Therefore, the school satisfied its burden of production under part two of *McDonnell Douglas*.

However, under closer scrutiny, appellant's explanations were shown to be pretexts for discrimination under part three of the *McDonnell Douglas* test. More specifically, the trial court found them to be "after-the-fact rationalizations." The trial court found that Ridler's completion of Chef's Training I and II and his cooking experience with the Olivia National Guard made him qualified under the school's first three alleged hiring criteria relating to prior cooking experience.

Appellant maintained that number four, prior cooking experience in the school, was a decisive hiring criterion. Assuming the school actually applied this criterion, it was illegitimate because it is discriminatory in effect. No male, no matter how well qualified, could meet this criterion simply because the school had never hired a male cook. An employer's reason, which in practice maintains a system of discrimination based on sex, is clearly illegitimate. *See* Minn.Stat. § 363.03, subd. 1(2)(a). The school's fourth stated hiring criteria therefore clearly fails under part two of the *McDonnell Douglas* test.

Additionally, under part three of *McDonnell Douglas*, respondent sustained his burden of showing the school's fourth stated reason was actually a pretext. *See Sigurdson*, 386 N.W.2d at 720. Respondent successfully carried this burden by showing that the school's proffered explanation is unworthy of credence. *Id.* The trial

court determined that the prior school cooking criterion was an "after-the-fact rationalization." First, the application form did not request information relating to this criterion, such as volunteer experience in the school. Second, the school interviewed one applicant who had no substitute cooking experience with the school, but failed to interview another applicant with such experience. Thus, when the school stated the fourth criterion, after the hiring decision was made, the trial court reasonably concluded it could not have actually influenced the decision.

The trial court examined and Ridler successfully rebutted the school's fifth stated criterion that it did not interview or hire candidates with a "poor work record." Once again the school was inconsistent. Ridler was not interviewed despite his chef training and work experience in cooking for the Olivia National Guard. On the other hand, female applicant Mages, who had no work record outside the home, was given an interview. Additionally, the school interviewed female applicant Minkel, who had three short-term jobs, two of which were only one year in length. Where an employer proffers job stability as a legitimate nondiscriminatory hiring criterion, but in practice interviews or hires persons with work histories at least as unstable as claimant's, a showing of pretext is made. *State v. Scientific Computers, Inc.*, 393 N.W.2d 200, 204 (Minn.Ct.App.1986).

Finally, the school was found to fail the test of credibility when offering this and other criteria. The trial court was convinced that the initial criterion used by the school was to exclude all male applicants. This amounts to a finding of pretext based on indirect evidence. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (pretext, and thus discriminatory motive, may be shown through indirect evidence, casting doubt on the credence properly accorded the employer's articulated reasons).

In sum, we hold that substantial evidence exists in the record as a whole to support the trial court's finding, and that the trial

court's findings are not clearly erroneous. Ridler established by a preponderance of the evidence that the employer discriminated against him based on factors prohibited by the MHRA. *See Anderson*, 417 N.W.2d at 623.

*Adequacy of Findings Under Sigurdson*

Although the trial court cited the full *McDonnell Douglas* test in its findings, it did not specifically use the term "pretext" when analyzing the school's reasons and justifications. If, in the fact findings, the term "pretext" had been used instead of "after-the-fact rationalizations," the trial court might have more clearly indicated that the reasons proffered by the school failed part three of the analysis. However, *Sigurdson* does not require a trial court to rigidly and mechanically "parrot" a *McDonnell Douglas* analysis. *See Sigurdson*, 386 N.W.2d at 720.

We believe the trial court stated its findings fully enough to indicate that it explicitly applied the *McDonnell Douglas* analysis as required. *See id.* The trial court's finding of discrimination is supported by the weight of the evidence; and as there was no clear error, we will not set aside the judgment. *See Anderson*, 417 N.W.2d at 627.

*Attorney Fees*

■ Pursuant to Minn.Stat. § 363.14, subd. 3 (1986), respondent is entitled to reasonable attorney fees as the prevailing party on appeal. *See Anderson v. Hunter, Keith, Marshall & Co.*, 401 N.W.2d 75, 83 (Minn.Ct.App.1987), *rev'd on other grounds*, 417 N.W.2d 619 (Minn.1988) (remanded for findings on the reasonableness of the trial court's attorney fee award).

Accordingly, Ridler, under Minn.R.Civ. App.P. 127, may file a petition with this court requesting additional attorney fees.

## DECISION

The trial court properly concluded that appellant unlawfully discriminated against respondent on the basis of sex. Respon-

dent is entitled to attorney fees for defending the trial court's decision on appeal.

Affirmed.